CITY OF MICHIGAN CITY *v.* WITTER, TRUSTEE.

[No. 27,522. Filed May 26, 1941.]

*Theron F. Miller,* of Michigan City, for appellant.

*Walter E. Parent,* of Michigan City, and *J. Walter Yeagley* and *John G. Yeagley,* both of South Bend, for appellee.

ROLL, J.—In December, 1934, appellant city entered into a written contract with R. C. Witter and Sons, Inc.,

for the construction of an interceptor sewer system in the City of Michigan City.

After completion of the work, and after payment of the agreed contract price, plus an additional amount for approved changes, said firm instituted this action to recover the further sum of $29,475.86, for extra work and materials occasioned by changes made in plans at the direction of the engineer in charge of construction.

The record discloses that soon after the contractor began work, it developed that certain changes in the plans would be necessary in order to make the sewer system work properly.

The bill of particulars, filed as an exhibit and made a part of the complaint, shows that the extras claimed by appellee consisted of cost of materials and labor in constructing extra manholes not shown on the detailed plans, cost of constructing a different type of manhole than those specified, occasioned by conditions discovered as the work progressed, changes in the size and kind of pipe, relocation of the sewer, and other changes and delays occasioned by conditions discovered after the work was commenced, and all done at the direction of the engineer in charge of the work.

The evidence produced at the trial shows that soon after the contractor started construction of the sewer, it was discovered that the exact place of the existing sewers was not correctly located on the plans, and also the contractor discovered existing sewers not shown in the plan. These discovered conditions made it advisable to construct extra manholes, and in certain instances where the plans specified a standard manhole, to change it to either an interceptor manhole or a combination of a standard and interceptor manhole. After the contractor had made three changes at the direction of the engineer in charge, he, the contractor, requested a

meeting with the Board of Works of the City of Michigan City. Such a meeting was held, and Mr. R. C. Witter appeared before the board and made explanation of the changes already made and stated that additional changes would, in all probability, be found necessary as the work progressed and that such changes would occasion extra labor and materials. He also stated that he should be paid for whatever extras would be occasioned by the changes. One of the members of the board stated that whenever the engineer in charge of construction should determine upon changes to be made in the original plans and specifications, and such change occasioned additional work and extra material, the contractor should write a letter to Walter E. Parent, an attorney employed by the city to conduct the legal phases of this project, notifying him of the proposed change, and if the contractor received no objections from the board of works, he should proceed under the direction of the engineer in charge, and the city would pay for any extras occasioned by said changes.

The contractor did write to Mr. Parent concerning the three changes already made, antedating the letters to correspond with the date the extra work was performed. Afterwards some twenty-two additional changes were made by the engineer in charge which required extra labor and materials. Each time the contractor wrote a letter to Mr. Parent covering the changes to be made and an estimate of the extra cost. No objections were received to these changes from the board of works, and the changed specifications were carried out.

Mr. Parent testified that he submitted to the board of works all of the letters received from the contractor concerning the proposed changes. After the work was completed, the sewer was accepted by the city and the

contract price paid. Appellee demanded payment of the extras but the city refused payment therefor.

Appellant, in its brief, makes no contention that the changes made and for which extra cost is claimed by the contractor were not made at the direction of the engineer in charge of the construction, and it does not contend that the verdict of the jury for $15,734.92 was excessive. While the evidence concerning the arrangement made between the contractor and the board of public works as to the changes in the plans and the payment for the extra cost is conflicting, the appellant, in effect, concedes the evidence upon that point to be sufficient to support the verdict.

Appellant's principal contention is based upon the provisions of Section 11 of the plans and specifications, which provision reads as follows:

"Section 11. The Board reserves the right to alter or change any detail in the materials or method of construction, which will not materially increase or decrease the cost of the work, without any additional compensation to the Contractor. More important changes or alterations may be made by the Board, should the exigency arise and become apparent during the progress of the work, through faulty design discovered in the drawings and specifications, or should the Board deem it advisable to do so for the betterment of the work, notwithstanding that such changes or alterations may materially increase or decrease the cost of the construction; but the Contractor shall not proceed with such alterations or changes without a written order from the Board. The price to be added to or deducted from the contract amount, if agreed upon between the Board and the Contractor, shall be appended to the order; but in case the Board and Contractor cannot agree as to the price, it shall be taken as the estimated actual cost of the work ordered to be added or deducted by the Board, plus twelve and one-half per cent (12½%) for profit and overhead, as determined by the Engineer.

It is expressly agreed and understood that any alterations or changes made, as provided and set out in this section, shall not in any way violate or annul any of the obligations or conditions of the contract."

Appellant leans heavily upon the provision, "but the Contractor shall not proceed with such alterations without a written order from the Board," and insists ■ that this provision of the contract cannot be waived by the city and even if it be conceded that extra work and materials were furnished by the contractor at the direction of the engineer in charge and in pursuance to the arrangement hereinbefore mentioned, still appellee is not entitled to recover.

We do not think that appellant's position can be sustained. In the case of *Alsmeier* v. *Adams* (1916), 62 Ind. App. 219, 245, 105 N. E. 1033, 109 N. E. 58, the court had under consideration a very similar question. In that case certain landowners, whose lands were affected by the construction of an interceptor sewer, instituted an action asking that the acceptance of the sewer by the board of public works and the primary assessment roll adopted thereon, be set aside as fraudulent and void. The basis of the action was to the effect that while the specifications required that a large portion of said sewer be constructed of monolithic concrete, eight inches in thickness, most of the portion as actually constructed consisted of reinforced concrete pipes in sections of three feet in length, and about three and one-half inches thick; and also it was claimed that the sewer was defectively constructed.

The specifications provided that in case of exigency calling for any substantial change in the method or process of construction by reason of unforeseen obstacles, etc., such changes should be made only on the written order of the board of works. That provision

of the contract was not followed. Conditions did arise that were unforeseen, and without a written order of the board, monolithic concrete was eliminated and reinforced concrete pipes in sections were substituted. The court in speaking of the power of the board of works to direct or permit a change in the plans and specifications without following the provisions of the contract in reference thereto said:

"The fact of the omission of such written order, however, is not sufficient to invalidate the proceedings. Granting that the power existed to direct or permit the use of such reinforced concrete construction under the circumstances presented, a provision in the specifications that the exercise of such power should be evidenced by writing was not necessary to its validity. If the power to direct, or permit the changes existed, it could have been exercised by agreement with the contractor, in the absence of any provision in the specifications to that effect. The fact then that said change was made and carried out without a written order was but an irregularity and not sufficient to invalidate the proceedings. (Citing cases.) But here the use of said reinforced concrete pipes in place of said monolithic construction was made by agreement between the contractor and the engineer. If the granting of authority so to depart from the literal provisions of the specifications would not have been *ultra vires* as to the board, in case the board rather than the engineer had taken the initiative, then it was within the power of the board to ratify the action of the engineer in said respect. When said matter was first brought to the attention of the board, it did not in terms either approve or disapprove said change in construction, but thereafter it gave said matter frequent consideration, and, as the work progressed, it constantly acquiesced in the action of the contractor and engineer, and in said work as being done, and finally it accepted said improvement with full knowledge that about 13,000 feet of it had been constructed by the use of said reinforced concrete as arranged by the

contractor and engineer. Such facts are sufficient to amount to a ratification. (Citing cases.)"

We think the principle laid down in the above case is controlling in the case at bar. In the case at bar the changes for which appellee is asking compensation were made under the direction of the engineer in charge of the construction, an employee of the city whose duty it was to see that said sewer system was properly constructed. As stated hereinbefore said engineer in charge knew that certain changes had already been made and that other changes would likely have to be made and if and when such occurred the plans and specifications would be changed to meet the conditions as they arose. The agreement between the contractor and the city was to the effect that when changes were necessary and the engineer in charge made changes in the plans, he, the contractor, was to write a letter to Mr. Parent and, if no objections were made by the board of works, the contractor was to proceed and execute the changed plans. If the change occasioned additional work and material, the city would pay for the same. This agreement was fully carried out. Changes in the plans and specifications were made as a result of discovered conditions. Letters were written to the attorney setting forth the purposed changes and the estimated extra cost. The letters were submitted to the board of works and no objections were made by them. The contractor, having received no objections, proceeded to execute the changed specifications. It is our judgment that after said contract had been fully executed, no objections having been made as to the character of the work or materials furnished, the city became bound to pay for the same.

Appellant further contends that the oral agreement to pay for extras occasioned by changes was void for

the reason that the provisions of Acts 1929, ch. 202, § 1,. p. 680, § 53-101, Burns' 1933, § 14082, Baldwin's 1934, was not followed. This provision of the statutes, in substance, provides that when any public building or other public work or improvement is to be constructed, etc., at the expense of the state, county, city, etc., at a cost of $5,000 or more, a contract shall be let to the lowest and best bidder.

The provisions of this statute have no application to a case such as is here presented. In *Board of Commissioners, etc.* v. *O'Connor* (1894), 137 Ind. 622, 627, 35 N. E. 1006, 37 N. E. 16, this court reviewed many authorities bearing upon the right of a contractor to recover from a municipality for additional labor and materials, not included within the written contract. The court in that case said:

"The question of the power of those chosen by boards of commissioners to superintend the construction of public works, and to direct that additional labor and materials, not included within the written contracts, be done and furnished, and to bind the counties by such action, is not new in this State. (Cases cited.)

"These decisions sustain the conclusion that such superintendents may bind the county for work done and materials furnished beyond the provisions of the contract, and that in the absence of any agreement as to the cost of such additional labor and material, the recovery may be for the reasonable value thereof.

"The case of *Board, etc.* v. *Hill, supra,* is, in most respects, similar to the case before us, the only difference in principle being that the original work was destroyed by flood instead of becoming deficient through the insufficiency of the plans and specifications prepared by the agent of the county and adopted by the board. Recovery was maintained for the original work under the contract and for the second work, as ordered by the superintendent and a single member of the board, upon the implied contract and for its alleged reasonable value."

So, in the case at bar, the plans and specifications were defective: conditions developed that were not known at the time the plans and specifications were adopted and could not have been ascertained at the time with any reasonable degree of diligence. To hold that under such circumstances the municipality, or the agents placed in charge of the construction, were without power to correct the mistake would be the height of folly. If then, the power to make necessary changes does exist, and the power is exercised at added cost and expense to the contractor, it would be unjust to deny him compensation therefor.

Appellant further urges that there could be no recovery for the reason that there was no existing appropriation out of which extra compensation could be paid. We think that the record shows otherwise. As we read the record it shows that there were sufficient funds appropriated by the city out of which appellee's claim could have been paid. Sufficient funds were appropriated and if that be true, the city cannot escape liability by using those funds for some other purpose than that for which they were appropriated. This question was so decided in the recent case of *Read* v. *Beczkiewicz, Treasurer* (1939), 215 Ind. 365, 18 N. E. (2d) 789, 19 N. E. (2d) 465.

Complaint is made by appellant of certain instructions given in the case. What we have heretofore said about the liability of the city for the extra labor and materials disposes of the substantial questions raised on the instructions. We find no reversible error in the record.

Judgment affirmed.

NOTE.—Reported in 34 N. E. (2d) 132, 135 A. L. R. 1259.