## GOLDBOSS v. REIMANN et al.

District Court, S. D. New York.

March 5, 1942.

Sabath, Perlman, Goodman & Rein, of Chicago, Ill., and Samuel L. Chess, of New York City (Samuel L. Chess, and Robert Ratner both of New York City, of counsel), for plaintiff.

Root, Clark, Buckner & Ballantine, of New York City (Arthur A. Ballantine, of New York City, of counsel), for defendants.

BRIGHT, District Judge.

The defendants Lawrence W. Schmidt, Ross Beason, Bernard E. Lawson, Maryland Sponsors, Inc., Administrative and Research Corporation (New York), American Depositor Corporation and Quarterly Income Shares, Inc., the only defendants who have been served and appear herein, move (1) under Rule 12(f) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for an order striking out certain portions of the amended complaint, and (2) for summary judgment pursuant to Rule 56(b) upon the ground that there is no genuine issue as to any material fact, that the amended complaint fails to state a claim upon which relief can be granted, that the stockholders, including plaintiff, have authorized, ratified and acquiesced in the execution and performance of the contracts challenged, and that the six year statute of limitations is a complete defense to the plaintiff's claim.

The plaintiff counters that the court refuse the application for summary judgment or direct a continuance of the application in order to permit her, pursuant to Rule 56(f), to take the testimony of the defendants or others in order to present facts essential to justify her position.

The action is brought by the plaintiff, a shareholder of the defendant Quarterly Income Shares, Inc., in her own behalf and in behalf of the corporation and all other shareholders, to require the defendants to

account with reference to their acts and doings as officers, directors and otherwise, in the receipt of moneys paid by the corporation as fees, salaries, commissions or other compensation, that the defendants be decreed to pay whatever shall be found due from them or any of them by reason of such matters, and for other relief.

The affidavit of the plaintiff's attorney, as well as a reading of the complaint, show that the cause of action, insofar as it is derivative, revolves around (1) an underwriting agreement dated December 12, 1932, between Administrative and Research Corporation (Maryland), now the defendant Maryland Sponsors, Inc., hereinafter called the Maryland Corporation, and the defendant Quarterly Income Shares, Inc., under which the Maryland Corporation was appointed exclusive sales agent of Quarterly's shares, and (2) an advisory or supervisory service agreement or management contract dated August 23, 1934, between the defendant Quarterly and Administrative and Research Corporation (New York), under both of which contracts plaintiff claims exorbitant fees, compensation and commissions were paid for the personal benefit and profit of the defendants other than the defendant Quarterly.

It is clear that a derivative action such as this can be brought only for the benefit of the corporation of which the plaintiff is the shareholder, that any recovery is the property of such corporation, and that the plaintiff is not interested therein other than that as a shareholder she may be benefited thereby. Such an action can only be maintained where the rights of the corporation are invaded resulting in damage to it.

The amended complaint obviously contains many allegations which have no bearing upon and are not in anyway material or pertinent to such a derivative action. Therefore, there should be striken from said amended complaint the following allegations for the following reasons: paragraphs 30, 31, 32, 33 and 34, upon the ground that the allegations therein contained relate to matters and things not involving in any way the defendant Quarterly but allege actions and proceedings by some of the defendants prior to its incorporation; paragraphs 35(b), (e), (f), (k), so much of (*l*) as alleges, "that it would be further represented to prospective investors that a provision for the redemption or repurchase of said shares would be inserted in the certificate of incorporation of said Quarterly to said effect and that such provision or provisions and any amendement thereof of said certificate of incorporation would be inscribed on the back of the certificates of stock deliverable to shareholders in letters so small as to be, to all intents and purposes, undecipherable;" the third sentence of paragraph 37, and so much of the fourth sentence as reads, "The actual intent and purpose of the said Ross Beason and his associates and their actual accomplishment as the organizers of said Quarterly was to effectuate their said scheme and conspiracy to acquire, by the sale of shares and by the exchange thereof for shares in fixed trusts which had previously been sponsored, promoted and controlled by them, large sums of money running into many millions of dollars obtained from the investing public throughout the United States, and * * * so manipulated the funds and securities and"; 38, 47; so much of paragraph 50 as reads, "made misleading and false representations to the plaintiff and to the purchasers of stock of said Quarterly and"; 51, 55, 56, 57, 58 and 59, upon the ground that they contain allegations of representations made to purchasers of stock of Quarterly, or with reference to individual rights of investors, which might (I do not so decide) give rise to individual actions on each of their behalf. Hackner v. Guaranty Trust Co., 2 Cir., 117 F.2d 95; Price v. Union Land Co., 8 Cir., 187 F. 886–889; Monte Rico Min. & Mill. Co. v. Fleming, 8 Cir., 258 F. 106; Willcox v. Harriman Securities Corporation, D.C., 10 F.Supp. 532–534.

It may be, in order to preserve the continuity and sense of the allegations of the amended complaint after these deletions, that plaintiff will desire to serve a reamended complaint in compliance with this decision. If she does, she may have ten days after the entry of the order hereon in which to do so.

The amended complaint after such excision in substance alleges: That the defendant Quarterly was incorporated in Maryland on December 9, 1932. Ross Beason & Co., Inc. (it is called a defendant but is not named as a party), was incorporated in New York on October 10, 1929, by the defendant Beason to deal in securities, was at all times dominated and controlled by him, and was dissolved on May

22, 1927. Ross Beason & Co. of California, Ltd. (also called a defendant but not named as a party), was organized in California in about 1929 to sell securities by the defendant Beason, who was at all times a majority stockholder thereof, and dominated and controlled its activities. It has since been dissolved. Smith Burris & Co. Inc. was organized in Illinois in about 1927 to sell securities by Cedric H. Smith, at all times a majority stockholder and a controlling and dominating force in its activities.

The defendant Maryland Sponsors, Inc., was incorporated on October 24, 1929, in Maryland, under the name of Administrative and Research Company (Maryland) by Beason and Smith, the name being changed on October 24, 1935, and the stock of which was owned one-third by Ross Beason & Co. of California, one-third by Ross Beason & Co., Inc., and the remaining one-third by Smith Burris & Co., Inc. The defendant Administrative and Research Corporation (New York) was incorporated in New York to conduct the business of statistical and research work and investment analysis, by Beason, Smith and others, 96% of the stock being owned by the Maryland Corporation aforesaid. By other allegations the interest of the individual defendants as directors, officers and stockholders of the several corporations since 1932 is set forth. It is further alleged that Beason, together with the two Beason corporations and Smith Burris & Co., Inc. (called "Ross Beason and his Associates"), in or about 1934, conspired for the purposes of collecting large and exorbitant fees, commissions, gains and profits, and organized Quarterly as an investment company, with power to invest funds obtained from the sale of its stock and from other sources; that Beason was to be president and chairman of its board of directors, with complete domination and control, and without the necessity of any considerable investment of personal funds by him and his Associates; that upon incorporation, they would cause the corporation to enter into the contract dated December 12, 1932, for the sale and exchange of its shares, with the Maryland Corporation, which would, in turn, make a contract for the wholesale distribution of such shares with the two Beason corporations and Smith Burris & Co., which, as has been shown, owned in equal parts all of the stock of the Maryland Corporation, and the three corporations would distribute such shares to retail brokers and dealers for distribution and sale to the public. By that means, the defendant Beason would participate in the commissions from his own corporations, which, in turn, owned two-thirds of the Maryland Corporation, which also shared in the commissions. It is further stated that Beason and his Associates caused the contract dated August 23, 1934, to be made by Quarterly with Administrative and Research Corporation of New York, almost completely owned by the Maryland Corporation, for pretended management and supervisory service, and which corporation was highly specialized in the management of investment companies and in values of securities and trends of securities markets for which it would be paid large fees, and which management corporation would be practically entirely and secretly controlled by Beason and his Associates. It is further alleged that in the effort to make legal contracts between Quarterly and the other corporations controlled wholly or largely by defendants, Beason and his Associates caused to be inserted in the certificate of incorporation of Quarterly, provisions permitting such contract and that the shareholders of Quarterly should authorize such a contract.

Pursuant to that conspiracy and scheme, it is alleged that the defendant Quarterly was organized in December, 1932, with the powers and exculpatory provisions mentioned and its affairs were conducted so as to create for Beason and his Associates exorbitant profits, fees and other compensation, without any considerable investment by them and without risk of loss, all well knowing that investors in Quarterly shares would not be advised or know of the provisions in such certificate of incorporation.

Under the sales contract between Quarterly and the Maryland Corporation, a commission of $9\frac{1}{2}\%$ of the net asset value of the shares (which is claimed to be unconscionable) was paid to the Maryland Corporation which retained $1\frac{1}{6}\%$, and paid the balance to the two Beason Corporations and Smith Burris & Co., who retained 5% and paid the remaining $2\frac{1}{2}\%$ to retail dealers, the total amount of commissions paid exceeding $1,000,000. Some $32,000,000 of shares of Quarterly were sold. Under the management contract with the Administrative and Research Corporation (New York), entirely dominated and controlled by Beason and his Associates,

there was paid for its alleged advisory services in excess of $1,000,000.

It is shown by the defendants, on the other hand, that the dual relation between the Beason and Smith corporations, was recognized and attempted to be permitted by provisions in the Quarterly certificate of incorporation, that from time to time the shareholders of Quarterly were advised of such inter-relations, and that they ratified and acquiesced in the sale contract of 1932 and in the management contract of 1934. For those reasons, it is urged, the transactions were entirely legal and that no proper complaint can lie against the defendants because thereof.

It is alleged, however, that the fees so paid by Quarterly and the commissions taken by Beason and his Associates were exorbitant and unconscionable, and that the ratification by the stockholders was obtained by means which, notwithstanding the certificate of incorporation and the stockholders' vote, would not protect these defendants from legal liability.

■ The allegations of the complaint show that defendants over a period of years during which the matters and things criticized transpired, were officers and directors of Quarterly and other corporations dually controlled, and whose interests were in many respects conflicting. Obviously, large sums of money were paid as fees, commissions and otherwise, in which it may appear defendants benefitted personally. The determination of whether or not the doing of the things alleged or the making of the contracts challenged were a violation of the obligations owing by the defendants acting as trustees or in a fiduciary capacity as officers, directors, majority stockholders or otherwise; whether what they did or permitted was wrong, in view of their relationship with Quarterly; whether the fees and commissions paid and received were exorbitant, unconscionable or otherwise; whether the defendants complied strictly with the so-called exculpatory provisions in the certificate of incorporation of Quarterly; whether such provisions as a matter of law or otherwise, immunized them from prosecution; whether the alleged ratification and acquiescence by shareholders of Quarterly in the sales and management contracts were sufficient to eliminate any source of liability with respect thereto; whether the statute of limitation applies; and what, if anything, equity and fair

dealing will require of these defendants, in view of their inter-relation and a possible determination that their individual interest conflicted with their duties to Quarterly, might well wait until the plaintiff shall be permitted to seek further evidence under the liberal rules of this court.

If it is true, as alleged, that Quarterly was dominated and controlled by Beason and his Associates, that the Maryland Corporation was owned by them, and the Administrative and Research Corporation (New York) was owned by the Maryland Corporation, it might well be asked, as suggested by plaintiff, why it was necessary for Quarterly to spend thousands of dollars for marketing its shares and for investment advice, in view of the obvious fact that the same persons could have accomplished these activities within the corporate framework of Quarterly as they did within the framework of other corporations. On the other hand, if it is true, as alleged, that the intercorporate contracts challenged were authorized by the charter of Quarterly, and were acquiesced in and ratified by its shareholders, it might well be asked, as suggested by defendants, why should this court be concerned as to their legitimacy. These inquiries, and the matters previously adverted to, and others which might well be presented, pose questions for determination which should be decided only after a full presentation of the facts by both parties.

■ Rule 56(f) provides that where it appears from affidavits of a party opposing a motion for summary judgment that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or order a continance to permit affidavits to be obtained or depositions to be taken or a discovery to be had or make such other order as is just.

I feel that such a showing has been made here by the affidavits presented in behalf of plaintiff. The circumstances set out in the amended complaint justify, in my opinion, a full opportunity on the part of the plaintiff to investigate and challenge the contracts mentioned and all dealings thereunder.

I feel perfectly justified in permitting such examination and discovery under Rule 56(f) in order to aid plaintiff in presenting such facts as she might be able to obtain in opposition to the present motion

for summary judgment. I think, however, that the more orderly procedure would be to require the defendants to answer, as it seems from the papers submitted that many of the facts may be admitted. After answer, the same relief can be obtained by plaintiff as she now seeks in aid of her opposition to the present motion. Accordingly, plaintiff's motion under Rule 56 will be denied without prejudice to her application for the taking of depositions and a discovery after issue joined.

And the defendants' motion for summary judgment is likewise denied without prejudice to a renewal thereof after issue joined and after plaintiff shall have had fair opportunity to take depositions and make discovery under the rules, which procedure, however, must be promptly and diligently proceeded with by her.

Settle order on notice.