HOME OWNERS CONSTRUCTION CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BOROUGH OF GLEN ROCK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued January 9, 1961—Decided March 20, 1961.

Mr. *J. Mortimer Rubenstein* argued the cause for the appellant (*Mr. George L. Garrison,* on the brief).

Mr. *George Winne* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, J. The Appellate Division affirmed the summary judgment which the Law Division had entered for the defendant. We certified on the plaintiff's application. 33 *N. J.* 110 (1960).

█ The plaintiff's complaint alleged in its first count that the Borough of Glen Rock advertised for bids on work to be done on Doremus Avenue, Glen Rock and submitted specifications to the prospective bidders; the plaintiff was the lowest bidder and entered into a contract with the borough on September 6, 1956; in the course of the work the borough requested that the plaintiff perform certain extra services and furnish certain extra materials; and it performed such services and furnished such extra materials for which it claims the sum of $5,877.35 from the borough. The second count repeated the allegations of the first count and sought recovery in *quantum meruit*. The borough's answer denied most of the allegations in the complaint and set forth three affirmative defenses which alleged that (1) there had been an accord and satisfaction, (2) if the plaintiff furnished labor and materials for which it had not been paid it did so without lawful authority from the borough and (3) the plaintiff executed a written instrument which had the legal effect of extinguishing its claim. After the filing of its answer the borough moved for summary judgment upon the ground that the plaintiff had "been paid in full for the monies allegedly due." An affidavit by Mr. Barney Smith, the borough's Assistant Superintendent of Public Works, was attached to the motion papers and referred to various instruments on file in the Borough Clerk's office. These instruments included Engineer's Certificate No. 1201 which was dated September 10, 1957 and indicated that the balance due the plaintiff was $14,261.45, voucher dated September 23, 1957 for payment in accordance with Engineer's Certificate No. 1201 and check dated September 23, 1957 in the sum of $14,261.45 to the order of and endorsed by the plaintiff.

An affidavit in opposition to the motion was duly filed. It was signed by Mr. William F. Van Schaik, the president of the plaintiff corporation, and set forth the plaintiff's version of the happenings to the following effect: When the road construction was begun Mr. Van Schaik discussed several items with Mr. Frank Evans who was then Borough Engineer—(Mr. Evans died prior to the filing of the plaintiff's complaint). It was discovered that the road base was in a very unstable condition and Mr. Evans and Mr. John Smith, the Borough Inspector, advised the plaintiff that it would be necessary to dig 2½ to 3 feet deeper in order to remove the unstable element and replace it with a 2½ inch stone rather than with the normal sub-base fill. The inspector for the State did not feel that this was necessary and "since this was a state aid job (see *N. J. S. A.* 27:15–1 *et seq.*) it was not encompassed in the initial specifications." Messrs. Evans and Smith then advised the plaintiff to proceed with the extra excavation and the 2½ inch replacement and that the "additional cost would be paid for by the Borough separately, and not under its state aid contract." Thereafter Mr. Evans, Mr. John Smith and Mr. Barney Smith requested that plaintiff do "additional and extra work which was outside of the initial contract bids with the agreement that this would be paid for by the Borough." On or about September 10, 1957 Mr. Van Schaik discussed with Mr. Evans the payment by the borough for the additional or extra work which had been completed by the plaintiff at the request of the borough officials and Mr. Evans advised that "since the extra work done would have to be paid for by the Borough and was not encompassed under the state aid job as bid, that insufficient moneys had been appropriated by the Borough to cover the extra work." Mr. Evans then advised that the method which had to be followed for the plaintiff to be paid for its work was to sign a voucher "for the work done in accordance with the contract only and limited to such work so that the Borough could recoup from the State of New

Jersey that portion of the price paid in accordance with the state aid program." Mr. Evans also advised that after the borough had recouped from the State "there probably would be sufficient moneys for the payment of the extras or if there were not sufficient moneys for the payment of the extra work that it would be included in the budget for the following year and paid at that time." Mr. Evans told the plaintiff to withhold submission of the bill for the extra work until "after the state aid contract was paid for and the Borough had received its money." As a result, the plaintiff followed the procedure suggested by Mr. Evans and signed the necessary documents. The Borough Engineer's certificate, the voucher and the draft "were not intended to cover the additional or extra work and materials to be paid for by the Borough outside of the contract let under the state aid program but such additional items were specifically to be billed at a later date to be paid by the Borough separately."

In due course the defendant's motion was argued orally before the Law Division. Counsel for the plaintiff at that time stressed that summary judgment would be improper since there was a material factual dispute. In response to the trial court's inquiry as to whether the Engineer had authority to authorize the extra services and materials allegedly furnished by the plaintiff, counsel for the plaintiff stated that the borough's answers to interrogatories acknowledged that "he was authorized" and that in any event he was not "thoroughly prepared" to meet the issue of authorization in view of the fact that the only issue raised by the motion was "whether or not there was an accord and satisfaction, whether the plaintiff was paid for this additional work." At the conclusion of the argument the trial court expressed the view that it appeared "indisputably from the affidavit of the defendant that the items for which the plaintiff seeks recovery in the complaint has been paid for by the defendant to the plaintiff"; and the summary judgment which was entered thereafter set forth that the pleadings and affidavits

showed palpably that there was no genuine issue as to any material fact challenged and "that the defendant is entitled to judgment upon the ground that the plaintiff has been paid in full for the monies sued upon as a matter of law."

The plaintiff's appeal from the summary judgment was duly heard by the Appellate Division which did not direct its attention to the issue of accord and satisfaction or payment but stated that in the exercise of its original jurisdiction it had examined the borough's call for bids, its contract with the plaintiff dated September 5, 1956, the accompanying specifications and the "statements demonstrating the manner and method of financing the payment of the sums to grow due for the improvement of Doremus Avenue." It noted that the contract price was expressly based on estimated quantities and that the quantities were to be increased or decreased as provided in the specifications which, in turn, provided for "extra or reduction orders" by the Engineer and for "supplementary agreements" in the event of certain plan changes. The Appellate Division found that the plaintiff's "failure to obtain extra orders or supplementary agreements" barred recovery by it in contract; it also found that the plaintiff was barred from recovery in contract by the absence of any appropriation for the extra work and materials (see *N. J. S. A.* 40:2–29; 40:50–6) and the absence of any bidding with respect thereto (see *N. J. S. A.* 40:50–1). Insofar as the plaintiff's *quantum meruit* claim was concerned the Appellate Division expressed the opinion that it was barred by statute (*N. J. S. A.* 40:2–29) and did not come within any of the exceptions recognized by this court in *Hudson City, etc., Co. v. Jersey City Incinerator Authority,* 17 *N. J.* 297, 309 (1955). See *Home Owners Construction Co. v. Borough of Glen Rock,* 59 *N. J. Super.* 519 (*App. Div.* 1960).

The Appellate Division affirmed the trial court's action but we are satisfied that the meagre record furnished no proper basis for the entry of summary judgment. See *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.*

67, 75 (1954); *West Side Trust Co. v. Gascoigne*, 39 *N. J. Super.* 467, 470 (*App. Div.* 1956); *Templeton v. Borough of Glen Rock*, 11 *N. J. Super.* 1, 4 (*App. Div.* 1950). In *Gascoigne* Justice (then Judge) Francis properly noted that, on a motion for summary judgment, the supporting papers are to be closely scrutinized whereas the opposing papers are to be treated indulgently, that doubts are to be resolved in favor of the conventional trial, and that the matter is not to be decided on affidavits which give rise to conflicting inferences "no matter how strongly they point in one direction or the other." 39 *N. J. Super.*, at *p.* 470. In *Judson* the court cautioned against the premature granting of summary judgment and referred approvingly to *Templeton* where the Appellate Division had said:

"Summary judgment is recognized as a wholesome device which may avoid needless delay and expense in awaiting and conducting trial; and the expeditious determination of a cause is admittedly an important goal of our present rules of practice and judicial administration. Nonetheless when its attainment involves the deprivation of a full and fair trial on disputed facts, its price comes too high. See *Doehler Metal Furniture Co. v. United States*, 149 *F.* 2*d* 130, 135 (2*d Cir.* 1945); *Transcontinental G. P. L. Corp. v. Borough of Milltown*, 93 *F. Supp.* 283, 286 (*D. C. D. N. J.* 1950). In the *Doehler* case the court noted the time lost in the federal courts where summary judgments have been improvidently entered and reversed on appeal; similar instances in our state courts are not at all rare. See, *e. g.*, *Mitchell v. Wrightstown Community Apartments, Inc., supra* [4 *N. J. Super.* 321 (*App. Div.* 1949)]; *Hodes v. Dunsky*, 5 *N. J. Super.* 333 (*App. Div.* 1949); *Lionshead Lake, Inc. v. Township of Wayne*, 9 *N. J. Super.* 83 (*App. Div.* 1950). In appropriate circumstances premature summary determination might perhaps be avoided by more liberal use of the court's comprehensive power to continue the motion, with conditions if necessary, where pretrial depositions and discovery may serve to remove doubts as to whether there are disputed questions of material facts. *Cf. Rule* 3:56–7; *Goldboss v. Reimann*, 44 *F. Supp.* 756 (*D. C. D. N. Y.* 1942)." 11 *N. J. Super.*, at *pp.* 4–5.

See also *Monmouth Lumber Co. v. Indemnity Ins. Co. of North America*, 21 *N. J.* 439, 449 (1956); *McDermott v. Botwick*, 38 *N. J. Super.* 528, 532 (*App. Div.* 1956).

The affidavit which was submitted by the Borough in support of its motion for summary judgment indicated that when the Engineer issued his certificate dated September 10, 1957, the Doremus Avenue work had been completed for the sum of $51,085.71, including stated extras, and that $36,824.26 had been paid leaving a balance of $14,261.45. Thereafter this balance was paid by the borough's check to the plaintiff dated September 23, 1957 and on the basis of the foregoing the borough urged that there had been payment in full. That was the single ground set forth in its notice of motion and the plaintiff filed the affidavit by Mr. Van Schaik to meet it. According to his affidavit the Engineer's certificate and the check were never intended to cover the extras now claimed by it. He stated that there was an arrangement between the plaintiff and the Engineer whereby the plaintiff was to bill the borough separately for the extras after the borough had recouped from the State and that the procedure followed was at the suggestion or direction of the Engineer; this presented a factual issue with respect to the claim of payment and clearly precluded the entry of summary judgment on the ground advanced by the borough. *Cf. D & L Oil Stalion Co. v. Follzer,* 105 *N. J. L.* 391, 394 (*E. & A.* 1929).

Although the Appellate Division supplemented the record with various materials relating to the Doremus Avenue project, they furnished no sufficient basis for the entry of summary judgment. The original contract disclosed that the contract price was based on estimated quantities which could be increased or decreased in accordance with extra or reduction orders by the Engineer. If the matter were permitted to proceed to trial the plaintiff's evidence might well establish, as it has urged before us, that the extra work and materials were within the contemplation of the original contract, that the Borough Engineer had authority to authorize the extra work and materials, and that, under the particular circumstances, further approval in writing from the Engineer was either not required or was waived.

*Cf. Ippolito v. Borough of Ridgefield,* 94 *N. J. L.* 97, 104 (*E. & A.* 1920); *Thompson v. City of East Orange,* 94 *N. J. L.* 106, 111 (*E. & A.* 1920); *Brannworth v. Borough of Verona,* 94 *N. J. L.* 194, 196 (*E. & A.* 1920); *Michigan City v. Witter,* 218 *Ind.* 562, 34 *N. E. 2d* 132, 135, 135 *A. L. R.* 1259, 1264 (*Sup. Ct.* 1941); *First Savings & Trust Co. v. Milwaukee County,* 158 *Wis.* 207, 148 *N. W.* 22, 30 (*Sup. Ct.* 1914), modified on appeal 158 *Wis.* 207, 148 *N. Y.* 1093 (*Sup. Ct.* 1914); *Douglas & Varnum v. Village of Morrisville,* 84 *Vt.* 302, 79 *A.* 391, 394 (*Sup. Ct.* 1911). The Appellate Division's affirmance rested on the view that even upon the most favorable showing suggested by the plaintiff it would necessarily be precluded from recovery, either in contract or *quantum meruit,* by the absence of bidding, appropriation and written orders relating to the extra services and materials; we do not subscribe to that view. See *Ippolito v. Borough of Ridgefield, supra,* 94 *N. J. L.* 97; *cf. Lake Intervale Homes, Inc. v. Parsippany-Troy Hills,* 28 *N. J.* 423, 431 (1958); *Hudson City, etc., Co. v. Jersey City Incinerator Authority, supra,* 17 *N. J.* 297; *Smathers v. Board of Chosen Freeholders of Atlantic County,* 113 *N. J. L.* 281 (*Sup. Ct.* 1934). See also *Thomsen-Abbott Construction Co. v. City of Wausau,* 9 *Wis. 2d* 225, 100 *N. W. 2d* 921 (*Sup. Ct.* 1960); *Michigan City v. Witter, supra,* 218 *Ind.* 562, 34 *N. E. 2d* 132; *Pyle v. Kernan,* 148 *Or.* 666, 36 *P. 2d* 580 (*Sup. Ct.* 1934); 1 *Antieau, Municipal Corporation Law* § 10.01, *p.* 635, *et seq.,* § 10.11, *p.* 687, *et seq.* (1955).

In *Ippolito v. Borough of Ridgefield, supra,* the Borough of Ridgefield advertised for bids for the construction of a sewage disposal plant. Ippolito bid $10,300 for the completed plant, unit prices for contingent extras, and cost plus 15% for work on which no unit prices were bid. He was awarded the contract and duly entered upon his work. In the midst of the work the borough decided that the nearly completed foundation would be unsafe and ordered extra work for which no unit prices were provided in the

bid. Ippolito completed the extra work at a cost substantially in excess of $500 which was the amount then prescribed by the applicable bidding statute. *L.* 1912, *c.* 342, *p.* 593. The borough refused to pay for the extra work and Ippolito instituted an action which was dismissed by the Bergen County Circuit Court. This was unanimously reversed by the Court of Errors and Appeals.

In the course of his opinion for the Court in *Ippolito,* Chancellor Walker relied on cases elsewhere which allowed recovery for extra work despite the absence of any bidding with respect thereto where it appeared that there was no effort to evade the bidding statute and the extra work was merely incidental to the original contract or was necessitated by an unforeseen emergency; the Chancellor expressed the view that the municipality was adequately protected since, under the court's holding, a jury would be called upon to decide "whether the new work was occasioned by an unforeseen emergency or was but an incident of that provided for in the original contract, or was a mere effort to evade the statute." See 94 *N. J. L.,* at *p.* 104. In *Pyle v. Kernan, supra,* the court noted that "a reasonable degree of latitude is essential to an intelligent and efficient administration of public works" and that "if the rule were otherwise, public interests would be greatly jeopardized in the event of emergencies and unforeseen obstacles in construction work." 36 *P. 2d,* at *p.* 584. In *Michigan City v. Witter, supra,* the court referred to the fact that conditions during the course of the work disclosed that the original specifications were defective and expressed the view "to hold that under such circumstances the municipality, or the agents placed in charge of the construction, were without power to correct the mistake would be the height of folly," and it concluded that if "the power to make necessary changes does exist, and the power is exercised at added cost and expense to the contractor, it would be unjust to deny him compensation therefor." 34 *N. E. 2d,* at *p.* 135. See *Thomsen-Abbott Construction Co. v. City of Wausau, supra,*

100 *N. W. 2d,* at *p.* 925; *Jonathan Clark & Sons Co. v. City of Pittsburgh,* 217 *Pa.* 46, 66 *A.* 154, 156 *(Sup. Ct.* 1907).

 It must be borne in mind that the original contract was duly preceded by bidding and appropriation in strict accordance with the applicable statutes (see *N. J. S. A.* 40:2–29, 40:50–1, 40:50–6), in that respect the case at hand is distinguishable from the cases relied upon by the Appellate Division such as *Slurzberg v. City of Bayonne,* 29 *N. J.* 106 (1959) and *Hillside Tp., Union County v. Sternin,* 25 *N. J.* 317 (1957). See also *Bauer v. City of Newark,* 7 *N. J.* 426 (1951). The bidding and appropriation statutes embody sound public policy in the furtherance of efficient governmental administration and in "the avoidance of waste, extravagance and ill-considered spending." See *Slurzberg v. City of Bayonne, supra,* 29 *N. J.,* at *p.* 115. The statutes must, of course, be faithfully observed and any attempt to evade them must be stricken down. But they must also be construed and applied fairly and sensibly so as to further rather than defeat the legislative goals. In the course of a construction contract, *bona fide* emergencies may well arise and incidental alterations may well be required. Where the resulting additional expenditures are reasonable and are conscientiously viewed as being in fulfillment of the original undertaking rather than as departing therefrom *(cf. Hanna v. Board of Education of Wicomico County,* 200 *Md.* 49, 87 *A. 2d* 846, 848 *(Ct. App.* 1952)) it would clearly be contrary to the public interest to halt the undertaking and call for bidding with respect to the additional work entailed by the emergency or the incidental alteration. It may fairly be assumed that such course was not within the contemplation of the Legislature. See *Ippolito v. Borough of Ridgefield, supra,* 94 *N. J. L.,* at *p.* 103; *cf. Antieau, The Contractual and Quasi-Contractual Responsibilities of Municipal Corporations,* 2 *St. Louis U. L. J.* 230, 251 (1953). Similarly it may fairly be assumed that the Legislature did not contemplate the halting of the undertaking pending a further

specific appropriation for the additional work required by the emergency or the incidental alteration. See *Smathers v. Board of Chosen Freeholders of Atlantic County, supra,* 113 *N. J. L.,* at *p.* 286; *cf. Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, supra,* 28 *N. J.,* at *p.* 431; *Hudson City, etc., Co. v. Jersey City Incinerator Authority, supra,* 17 *N. J.,* at *pp.* 304–310; *Ohio Oil Co. v. Michigan City,* 117 *F. 2d* 391, 393 (7 *Cir.* 1941).

Finally we come to the issue of whether the absence of written orders relating to the extra services and materials necessarily precluded recovery. The plaintiff does not suggest that it ever obtained written orders but it does urge that further approval in writing from the Engineer was either not required or was waived. It asserts that during the course of its work it was discovered that the road base was in a very unstable condition and the Borough Engineer and Borough Inspector advised that it would be necessary to remove the unstable element and replace it with a $2\frac{1}{2}$ inch stone rather than with the normal sub-base fill; that the Engineer and Inspector notified it to proceed and stated that the borough would pay for the extra work; that acting in good faith and in reliance upon the Engineer's advice it performed this and other incidental extra work and followed the course of procedure suggested or directed by the Engineer for obtaining payment from the borough. Although in *Guizzette v. Kalrek,* 124 *N. J. L.* 461, 464 (*Sup. Ct.* 1940), Justice Case noted that mere performance of extra work does not give rise to the waiver of a construction contract provision requiring that the authority for the extra work be in writing, he did not in any wise question that the writing requirement may be expressly or impliedly waived by the clear conduct or agreement of the parties or their duly authorized representatives. See *Headley v. Cavileer,* 82 *N. J. L.* 635, 637 (*E. & A.* 1912); *Fortunato v. Cicalese,* 93 *N. J. L.* 461 (*E. & A.* 1919); *Guenther v. Moffett,* 77 *N. J. L.* 206 (*Sup. Ct.* 1908); *cf. Johnson v. Hospital Service Plan of N. J.,* 25 *N. J.* 134, 141 (1957);

*Frank v. Bd. of Education of Jersey City*, 90 *N. J. L.* 273, 278 (*E. & A.* 1917). The evident danger of imposition must, of course, be carefully guarded against and the burden of proof must rest firmly on the plaintiff; however, if there is clear and convincing evidence at the trial supporting the plaintiff's assertions, the jury may be permitted to find that, under the particular circumstances presented, the plaintiff is fairly and justly entitled to recover (see *Ippolito v. Borough of Ridgefield, supra*, 94 *N. J. L.* 97; *Fortunato v. Cicalese, supra*, 93 *N. J. L.* 461; *cf. Hudson City, etc., Co. v. Jersey City Incinerator Authority, supra*, 17 *N. J.* 297) for extra services and materials actually furnished to the borough, notwithstanding the absence of written orders. *Cf. Terminal Const. Corp. v. Bergen County, etc., Dist. Authority*, 18 *N. J.* 294, 316 (1955); *Fortunato v. Cicalese, supra*, 93 *N. J. L.* 461. See *Michigan City v. Witter, supra*, 34 *N. E.* 2d, at *p.* 134; *Alsmeier v. Adams*, 62 *Ind. App.* 219, 105 *N. E.* 1033, 1041, 109 *N. E.* 58 (*App. Ct.* 1914); *Douglas & Varnum v. Village of Morrisville, supra*, 79 *A.*, at *p.* 394; *cf. Blakeslee v. Board of Water Com'rs*, 121 *Conn.* 163, 183 *A.* 887, 894 (*Sup. Ct. Err.* 1936); *Campbell v. Kimball*, 87 *Neb.* 309, 127 *N. W.* 142, 144 (*Sup. Ct.* 1910).

Reversed and remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.