100 N.J. Super. 558 (1967)
242 A.2d 841
M. & O. DISPOSAL CO., ETC. AND DISPOSAL ASSOCIATES, INC., ETC., PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF MIDDLETOWN, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1966.
Decided September 1, 1967.
*560 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Vincent C. DeMaio argued the cause for appellant.
Mr. Peter F. Williams argued the cause for respondents (Messrs. Williams & Willette, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Township of Middletown appeals from a judgment entered in the Law Division based on a jury verdict awarding plaintiff contractors $53,046, and from a denial of defendant's motion for judgment and a new trial.
Following competitive bidding plaintiffs M. & O. Disposal Co. and Disposal Associates, Inc. (acting in joint venture) entered into a contract with defendant on December 8, 1960 to collect and dispose of garbage, refuse and rubbish in certain areas of the township for a three-year period, 1961-1963, at a contract price of $177,160.
In August 1964, after the contract had been performed and the contract price fully paid, plaintiffs brought suit to recover on quantum meruit for extra work allegedly performed during the three-year period at the request and direction of defendant township, its servants, agents and employees, which work plaintiffs claim was not required under the specifications of the contract.
Defendant township denied that plaintiffs performed extra work and asserted that the work they had performed was included under the terms of the contract. It alleged that any other work performed by plaintiffs was done without authorization of the township; that no servant, agent or employee *561 had authority to bind the township, and that no appropriation was ever made for the alleged extra work.
Plaintiffs' claim for additional compensation is based on their interpretation of paragraphs 12 and 28 of the specifications included in the contract. The paragraphs or those parts thereof which are pertinent read as follows:

"12. Definition of Terms

* * *
The term `rubbish' and `refuse' * * * shall be held to include all of the accumulations and waste substances from private houses and premises, boarding houses, stores, other buildings of whatever nature and public places, and shall include particularly such articles as ashes, discarded clothing, paper cartons, wooden boxes, crates, baskets, paper and paper materials, tin cans, rags, corn husks, grass, lawn and yard rakings, hedge and plant trimmings, provided such trimmings, etc. are tied in bundles or placed in containers, floor covering from residences, broken glass, bottles, discarded Christmas trees, crockery, metal beds and bed springs, metal leaders and gutters when removed for replacement, discarded household receptacles and utensils, toys and such other household equipment as may be discarded from a private residence, and such articles and things as are daily discarded from a private residence, and such articles and objects as are daily thrown into waste baskets and rubbish containers, but shall not include building materials nor the refuse from any new building, nor the refuse from any old building which is torn down in whole or in part, * * * trees, tree branches, tree stumps, waste from excavations, * * * The above materials are to be placed in containers weighing not more than seventy-five (75) pounds.
If and when any question arises as to what is intended to be collected and removed in the Township of Middletown, the Township of Middletown shall be the judge of what was intended to be covered by said contract or specifications." (Italics ours)

"28 Clean-Up Week

The contractors shall supply and use a sufficient number of trucks of ample power and capacity to render services in connection with three (3) cleanup weeks. These Clean-up Weeks shall be designated by the Township Committee. Use of the above mentioned trucks will be required to service the collection areas for Clean-up on the same day as regular collections take place. All vehicles used shall be subject to the Township or its duly authorized representative. All *562 open body trucks used in the collection of Clean-up Materials shall be equipped with tight-fitting canvas covers which will prevent any materials from spilling out, blowing off or being pushed off the truck."
Plaintiffs allege that under paragraph 12 they were not required to pick up specifically described refuse and rubbish set out by residents for collection unless it was tied in bundles or placed in containers. They also claim that the contract called for only one clean-up week each year during which they were not required to pick up materials specifically excluded under paragraph 12.
Defendant disagrees with plaintiffs' interpretation of paragraph 12. Moreover, it contends that the contract calls for three clean-up weeks each year and that the materials specifically excluded under paragraph 12 are not excluded from collection during clean-up weeks.
Plaintiffs' main witness was Anthony Miele, president of M. & O. Disposal Company and secretary of Disposal Associates, Inc. He testified that he had prepared the bid for the contract which was accepted by the municipality and that, based upon the specifications set forth therein, he had estimated the contract could be performed by use of three roto-pack trucks during the winter and four in the summer. He said that when operations began in January 1961 he discovered storm debris caused by hurricane Donna in September 1960 was still being placed out for collection by residents  that it was not tied in bundles or placed in containers, and included trees, branches, wood from buildings, and the like which were excluded under the specifications. He stated further that similar conditions arose following a flooding of the area in March 1961 and after a severe storm which occurred in March 1962, and that during the entire contract period residents set out refuse and rubbish which did not comply with the contract specifications.
On May 21, 1961 Miele sent a letter to the township business administrator stating that plaintiffs were not obligated to take away materials which did not comply with the specifications, and that the removal of such materials entailed additional *563 work "for which we will be obliged to bill you accordingly." The letter was not answered and plaintiffs admittedly submitted no bill therefor until after the contract had expired some three years later.
Miele testified that at different times during the three-year period he complained to township officials and said he wanted to be paid his additional costs for such work. His complaints were made to Richard Seuffert, township business administrator, Ernest Kavalek and Earl Moody, members of the township committee who served successively as the chairman of the garbage collection subcommittee, and Joseph Quail, the sanitation officer of the board of health. Miele admitted these officials had never promised payment of his additional costs; that they had merely directed him to go ahead and do the work. He said both Seuffert and Quail told him that if he didn't pick up the garbage his bonding company would come in and pick it up.
Miele testified that as a result of this extra work it was necessary to use an additional truck and two men daily throughout the three-year period, and to replace the three roto-pack trucks with new super-pack trucks in the summer of 1962. Plaintiffs claimed extra compensation of $60,070 consisting of $31,870 for labor, $21,000 for use of the truck, and $7,200 for use of the super-pack trucks for 18 months.
Miele further testified that the contract called for one clean-up week in each year but that because of the large accumulation of storm debris plaintiffs were required to provide extra clean-up days to remove it. He contended plaintiffs were entitled to additional compensation of $4,630.50 for 18 days in 1961, $2,415.20 for 14 days in 1962, and $637.44 for 6 days in 1963.
On cross-examination Miele admitted that no resolution had ever been adopted by the township committee authorizing plaintiffs to perform extra work or that they would be paid for extra work  that, in fact, plaintiffs never asked for adoption of such a resolution. He conceded that monthly bills for payments due under the contract were submitted *564 and paid throughout the contract period and that no bill for extra compensation was submitted until February 21, 1964 after the contract had terminated. He also admitted that under the contract clean-up weeks were to be designated by the township committee and that plaintiffs had received letters advising them of the weeks so designated.
Joseph Quail, a former employee of the township board of health who had served as its sanitation officer during the contract period, was called as a witness for plaintiffs. He testified that when residents complained that their garbage was not being collected he would call Miele and tell him to pick it up. When Miele informed him he intended to seek compensation for picking up materials not covered by the contract specifications he told Miele this was not his concern since he had no authority to compensate plaintiffs.
At the close of plaintiffs' case defendant moved for a judgment of dismissal on the ground there was no proof of a contractual or quasi-contractual relationship between the parties which was binding on the township. The trial judge reserved decision. The trial then proceeded and the township offered evidence in defense of the action. Richard Seuffert, the township business administrator, admitted that Miele complained to him during the first two years of the contract period that residents were not setting out garbage for collection as they should. However, he denied he had directed Miele to collect material not called for in the contract and maintained that he had told Miele not to do so. He testified that he had told Miele he expected plaintiffs merely to live up to the terms of the contract. Seuffert also testified the contract called for nine clean-up weeks during the three-year period, three each year, and that the township designated only six clean-up weeks during the entire period. He said plaintiffs were never promised extra compensation above the contract price.
Both Ernest Kavalek and Earl Moody, members of the township committee, also denied they ever directed plaintiffs to collect materials not called for under the contract and *565 denied that plaintiffs were ever promised additional compensation.
Following the jury verdict awarding damages to plaintiffs, defendant renewed its motion for judgment of dismissal upon which decision had been reserved, and in the alternative, for a new trial. Both motions were denied and this appeal followed.
We are satisfied that the decisive issue involved in this appeal is whether the trial judge erred in denying defendant's motion for a judgment of dismissal at the close of plaintiffs' case.
Defendant argues that, assuming plaintiffs' evidence and the inferences drawn therefrom to be true, the motion for dismissal should have been granted because the township was not legally obligated to pay plaintiffs for the additional work allegedly performed. It contends the proof showed that no extra work was authorized either by the township or any authorized representative on its behalf; that there was no agreement, express or implied, to compensate plaintiffs for any additional work, and that view in the light most favorable to plaintiffs it showed only that township employees told plaintiffs to collect and dispose of all refuse and rubbish set out for collection by residents.
The trial judge based his denial of defendant's motion for judgment on Home Owners Construction Co. v. Borough of Glen Rock, 34 N.J. 305 (1961). In that case plaintiff brought suit against the municipality for extra labor and materials furnished in construction of a road. The trial judge granted defendant's motion for summary judgment and plaintiff appealed. Plaintiff's affidavit alleged that during construction it was discovered that the road base was unstable and that in order to correct the same it was necessary to excavate to a greater depth than called for in the specifications and to replace it was a stone base. Defendant's engineer directed plaintiff to do the additional work and said the cost would be paid by the borough separately and not under the original contract. Plaintiff also performed other additional *566 work at the engineer's request under the same arrangements for payment. The Supreme Court stated that bidding and appropriation statutes must be faithfully observed but should be construed fairly and sensibly, and that in the course of a construction contract bona fide emergencies might arise and incidental alterations might be required. It further stated that in such cases where the additional expenses are reasonable and conscientiously view as being in fulfillment of the original undertaking, rather than as departing therefrom, it would be contrary to the public interest to halt the undertaking and call for bidding on the additional work entailed by the emergency or the incidental alteration. The court said that the original contract between the parties disclosed that the contract price was based on estimated quantities which could be increased or decreased on order of the borough engineer, and that if the case went to trial plaintiff might well establish that the extra work and materials were within contemplation of the original contract and that the engineer had authority to authorize the extra work. Concluding that factual issues were presented, the court vacated the summary judgment and remanded the case for a plenary trial.
We are satisfied that the facts in the instant case readily distinguished it from Home Owners Construction Co. v. Borough of Glen Rock, supra. Here there was no bona fide emergency which could not have been dealt with by the municipality under the provisions of N.J.S.A. 40:50-1 pertaining to municipal action when emergencies arise. Nor do the facts show that an incidental alteration of the contract was agreed upon by the parties. Plaintiffs concede that the alleged additional work was not within contemplation of the original contract, and there was no evidence that any municipal employee had authority to authorize the performance of extra work which would be binding on the township.
Since plaintiffs concede no express contract was entered into with the township or any employee authorized to act on its behalf we are not here concerned with the statutory restrictions and limitations relating to municipal contracts *567 for the collection and disposal of garbage. See N.J.S.A. 40:66-4, 40:50-1, 40:50-6.
Plaintiffs claim defendant is liable either upon an implied contract or in quasi-contract. They allege they performed services outside of the scope of the contract for which they should be paid; that defendant, having accepted the benefit of the service, is estopped to deny payment, and that the township's failure to specifically deny plaintiffs' right to compensation and to repudiate the services as they were rendered constituted a ratification sufficient to imply its responsibility therefore.
It is well established in this jurisdiction that a municipality can ratify a contract entered into by an unauthorized agent so long as such contract is one within the corporate power of the municipality. Johnson v. Hospital Service Plan of N.J., 25 N.J. 134, 135, 140 (1957). And see Potter v. Borough of Metuchen, 108 N.J.L. 447, 450-451 (Sup. Ct. 1931). Ratification need not be expressed; it may be implied when the conduct of the municipality manifests an intention to affirm the unauthorized act of its agent. The intention to ratify an unauthorized transaction may be inferred from a failure to repudiate it. Johnson v. Hospital Service Plan of N.J., supra, 25 N.J., at pp. 140-141. Moreover, it has been repeatedly held that equitable principles of estoppel will be applied against municipalities where the interests of justice, morality and common fairness clearly dictate that course. 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457, 463 (1963); Gruber v. Mayor and Tp. Com. of Raritan Township, 39 N.J. 1, 13 (1962).
However, since ratification and estoppel are based upon knowledge and intention it must be shown that the governing body of the municipality acted (or failed to act) with full knowledge of the material facts involved, either actually or as a matter of law. Board of Education of City of Asbury Park v. Hoek, 38 N.J. 213, 215 (1962).
In the instant case plaintiffs concede that no public officer promised them payment for the alleged extra work. *568 There was no evidence that the governing body of the township had knowledge that plaintiffs were performing work outside the scope of the contract. The first time the governing body was advised of plaintiffs' claim was on February 21, 1964, after the three-year contract had terminated.
Furthermore, even if unauthorized township employees had promised plaintiffs they would be paid if they performed extra work, the township could not be held liable. Giardini v. Mayor, etc., of Town of Dover, 101 N.J.L. 444 (Sup. Ct. 1925); Car Spring and Rubber Co. v. City of Jersey City, 64 N.J.L. 544 (E. & A. 1900).
We conclude, therefore, that there was no ratification of an implied contract by the municipal governing body and that the municipality did not engage in such conduct as to estop it from denying ratification. There having been no ratification, there can be no recovery. Potter v. Borough of Metuchen, supra; Giardini v. Town of Dover, supra; Car Spring and Rubber Co. v. City of Jersey City, supra. To hold otherwise would empower unauthorized municipal employees to impose liability on a municipality without the determination and judgment of the governing body to whom that function has been committed by statute, and would subvert the legislative purpose of the bidding statute to protect the public interest by keeping costs at a minimum and preventing fraud in municipal contracts.
The motion for judgment of dismissal should have been granted. In view of that determination we find it unnecessary to pass on the other grounds of appeal raised by defendant.
The judgment will be reversed and the cause remanded with the direction that judgment be entered in favor of the defendant.