**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3460-16T3

GECMC 2006-C1
COMPLEX 400, LLC,
a New Jersey limited
liability company,

      Plaintiff-Respondent,

v.

RP 400 URBAN RENEWAL,
LLC, a New Jersey limited
liability company,

      Defendant-Appellant,

and

NEW JERSEY MORTGAGE AND
HOUSING FINANCE AGENCY,
and THE STATE OF NEW JERSEY,

      Defendants.

_____

Argued September 18, 2018 – Decided November 20, 2018

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-010741-15.

Carl J. Soranno argued the cause for appellant (Brach Eichler, LLC, attorneys; Carl J. Soranno, of counsel and on the briefs; Paul M. Bishop, on the briefs).

Gregory R. Haworth argued the cause for respondent (Duane Morris, LLP, attorneys; Gregory R. Haworth and Steven T. Knipfelberg, of counsel and on the brief).

PER CURIAM

In this commercial foreclosure action, defendant, RP 400 Urban Renewal, LLC, appeals from the Chancery Division's February 8, 2016 order granting plaintiff, GECMC 2006-C1 Complex 400, LLC's motion for summary judgment and from orders entered on June 23, 2016, denying defendant's motion for reconsideration, and January 3, 2017, rejecting defendant's objection to the amount due. It also appeals from the court's March 7, 2017 Final Judgment of Foreclosure. We affirm substantially for the reasons stated by Judge Bruno Mongiardo in his written decisions issued with each order and judgment under appeal.

Plaintiff filed this action based upon defendant's failure to make monthly payments into escrow funds, as required by the parties' loan agreement. Defendant contended that plaintiff waived its right to those payments through a

telephone conversation between defendant's representatives and an agent of plaintiff's predecessor. For that reason, defendant also claimed that plaintiff was not entitled to the default interest amount provided for in the loan agreement. Defendant did not otherwise challenge the notes, mortgage, plaintiff's right to sue, or the fact that defendant did not make the escrow payments as required by the loan documents.

After the parties filed their initial pleadings, pursued discovery, and plaintiff filed a motion to strike under Rule 4:6-2, Judge Mongiardo converted the motion to one for summary judgment, without objection, and granted it, suppressing defendant's answer. He found that plaintiff established a prima facie case for foreclosure and that there were no genuine issues of material facts warranting trial because the express language of the fully integrated loan documents clearly established defendant's obligation to make the escrow payments and that plaintiff did not waive or modify that obligation under the loan agreement.

On appeal, defendant argues that Judge Mongiardo abused his discretion by awarding summary judgment in favor of plaintiff and denying its motion for reconsideration. Defendant contends again that it does not owe any default interest because it was not in default when it stopped making payments to the

3

escrow account as an agent of a loan servicer orally discharged defendant's obligation to make those payments. Additionally, defendant argues that Judge Mongiardo erred because he failed to consider certain documents that established plaintiff's waiver of its entitlement to those payments. It also avers that there is a genuine dispute of material fact as to whether defendant violated the covenant of good faith and fair dealing and that plaintiff is barred from seeking retroactive default interest by the doctrine of laches, estoppel, and unclean hands. Moreover, according to defendant, the retroactive application of default interest constitutes an unconscionable penalty and, in any event, should not have not been applied from April 1, 2012. We disagree.

We first address defendant's claims regarding the award of summary judgment and consider the facts derived from the motion record in a light most favorable to plaintiff. Those facts are summarized as follows. In February 2006, plaintiff's predecessor, General Electric Capital Corporation (GECC) loaned defendant $5,437,000 in exchange for two promissory notes (Note A and Note B) from defendant. Pursuant to the parties' loan agreement, defendant's two notes carried different interest rates. Note A had a principal amount of $5,117,000 and an "initial rate of 5.39% per annum," with payments due "on the

A-3460-16T3

first (1st) day of each calendar month." Note B had a principal amount of $320,000 and "an initial rate of 12.75% per annum" with the same due date.

Repayment of the amounts due under the notes was secured by a mortgage on rental property owned by defendant. The property, located in Paterson, is the site of a fifty-unit residential apartment complex for low and moderate income senior citizens who receive federal rental assistance.

The loan agreement required that defendant establish two escrow accounts (escrow funds) "as further security for the loan." One account was a "Replacement Escrow Fund" for replacement and repairs, and defendant was required to make a monthly payment of $1,045 into that account beginning on March 1, 2006 until March 1, 2016. The second account was designated as the "Springing Debt Service Escrow Fund." The agreement required defendant to make a monthly payment of $4,820 into that account from February 1, 2011 until January 1, 2016.

In the agreement, the parties specified different events of default under the loan. Section 9.1 of the agreement stated: "Borrower's failure to pay any regularly scheduled installment of principal, interest or other amount due under the Loan Documents within five (5) days of (and including) the date when due,

or Borrower's failure to pay the Loan at the Maturity Date, whether by acceleration or otherwise."  [(Emphasis added).]

According to Section 10.2 of the loan agreement, in the event of a default, the lender had the right to accelerate the loan balance without further notice and "exercise all rights and remedies therefor under the Loan Documents and at law or in equity."  One of those rights included the imposition of a default interest rate under Section 2.2.  That section provided for an additional five percent interest on the balance owed under the notes while "any Event of Default exists."

The agreement also required that any modification or waiver be in writing. Section 11.2 provided that "[n]o amendment or waiver of any provision of the . . . Loan Documents shall be effective unless in writing and signed by the party against whom enforcement is sought."  Further, under section 11.12, "[n]o course of dealing on the part of Lender . . . or [its] agents, nor any failure to or delay by Lender with respect to exercising any right, power or privilege of Lender under the . . . Loan Documents[] shall operate as a waiver thereof." Section 11.23 stated the parties' "Loan Documents . . . [could] not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties."  (Emphasis added).  The mortgage delivered by defendant to plaintiff contained similar provisions.

  A-3460-16T3

On April 1, 2012, defendant failed to make the monthly payments to the escrow funds due under the loan agreement. Plaintiff's predecessor did not take any action in response to defendant's default but, in March 2014, after plaintiff became the holder of the notes and mortgage, plaintiff notified defendant that it "was in default under the Notes and the other Loan Documents." When defendant did not remedy its default, plaintiff informed defendant in January 2015 "that the Loan had been accelerated and all sums due and owing under the Notes were immediately due and payable in full . . . ." According to plaintiff, as of January 2015, defendant owed $4,737,431.34 and "unpaid interest, including default interest . . . ."

On March 25, 2015, plaintiff filed its complaint in this action. Defendant filed a contesting answer, asserting fifteen affirmative defenses and a five-count counterclaim, including a claim for reformation and breach of the duty of good faith and fair dealing. In its pleading, defendant asserted that it made timely and consistent payments due under Notes A and B, and "insured the Property against hazard and loss." Specifically, defendant noted that under the loan agreement, "the obligation to tender monthly payments into the [escrow funds] commenced on [March 1, 2006 and] February 1, 2011." Defendant stated that the property "generate[d] sufficient revenue[,]" but admitted the revenue was insufficient "to

7

enable payment into the Debt Service Escrow Fund." Defendant noted that, even though it failed to make payment to the Escrow Fund, "[p]laintiff did not declare a Loan default in 2011" and allowed defendant to "continue to operate and manage the Property and [make] payments . . . on Note A and Note B." Moreover, defendant asserted that plaintiff "did not formally declare a default on the Loan until March 2014." The pleading did not mention any facts supporting defendant's defense that plaintiff waived its right to the escrow payments.

After the parties engaged in discovery, on December 23, 2015, plaintiff moved to strike defendant's defenses and dismiss its counterclaim, both of which were based upon defendant's allegation that plaintiff "orally modified the Loan Documents and waived its entitlement to [the escrow payments and] default interest." Defendant opposed the motion and filed a cross-motion seeking an order to reform the loan agreement, permission to file an amended counterclaim and to adjourn the scheduled trial date.

In a certification filed in opposition to plaintiff's motion, defendant's Managing Member, Gary Spirer, stated that in February 2012 he and Raymond P. Marzulli, Jr, defendant's property manager, decided to contact a loan officer of plaintiff's predecessor about the Debt Services Escrow. Spirer called the loan

officer to discuss the issue that "[w]hile the Property continued . . . to generate sufficient revenues to meet all of the [its] obligations, the revenues were not sufficient to enable payment into the Debt Service Escrow."  However, the loan officer was not "concerned about the inability to make the Debt Service Escrow payment since all other payments were being met and since the Property already had significant reserves . . . ."  According to Spirer, the Replacement Escrow Account grew to more than $60,000 by February 2012, and there was an "Additional Reserve Account" that defendant funded in the amount of approximately $375,000, "which [GECC and all of its successors], had a perfected security interest."

Spirer also stated that Marzulli subsequently contacted the same loan officer and relayed to Spirer that plaintiff's predecessor would be satisfied if defendant spent the entire Replacement Reserve Fund on improvements and repairs for the property.  Plaintiff's predecessor, according to Spirer, "never asked that anything further be done and there was no further communication . . . with respect to the Debt Escrow."  According to Spirer, plaintiff did not declare a default in either 2012 and 2013 but still allowed defendant to operate and manage the property while continuing to accept payments made on Notes A and B during that time.  He confirmed that on March 6, 2014, defendant received

letters from plaintiff that the Loan was in default for failure to pay and that plaintiff was willing to meet "to discuss the status and possible modification of the Loan." Spirer stated that the letter "contained onerous and prejudicial provisions that required [defendant] to waive any and all defenses" as well as other legal rights and would require it to be subject to the jurisdiction of Florida. Defendant declined to sign and the lender "refused to discuss the loan" with Spirer, despite his willingness to travel to Florida. Spirer certified that both before and after receipt of the March 2014 letters, defendant "diligently pursued efforts to refinance the Loan, which [was] scheduled to mature on March 1, 2016."

Spirer also certified that in 2014, defendant retained a mortgage refinance consultant and broker in an attempt to refinance its loan. It was not until January 7, 2016, that defendant received a commitment form a lender to loan defendant $4.7 million. While waiting for a response to its loan application, on November 17, 2015, defendant's attorney requested a payoff statement from plaintiff but never received one.

Richard D. Bloom, a certified public accountant who conducted an audit of defendant's financial statements, also submitted a certification in opposition to plaintiff's motion. Bloom stated that, according to audit procedures, he sent

a standard form to plaintiff to confirm defendant's account balance information in 2012, 2013, and 2014. According to Bloom, the form asked plaintiff to countersign the document to confirm that "[t]he information presented . . . is in agreement with . . . [its] records." The form also indicated that "a comprehensive, detailed search of . . . records, [did not disclose] other deposit or loan accounts . . . ."

On February 5, 2016, Judge Mongiardo heard counsels' oral arguments and on February 8, 2016, granted plaintiff's motion, entered an order, and issued a written opinion setting forth his reasons. In his decision, Judge Mongiardo concluded plaintiff established a prima facie claim for foreclosure, and that defendant's opposition did "not raise genuine issues of material fact." He found that none of defendant's factual assertions in opposition to summary judgment could "defeat [p]laintiff's right to foreclose." The judge rejected each of defendant's defenses as meritless, including its contention that plaintiff's claims were barred by the doctrines of laches and waiver. The judge found plaintiff's decision "not to accelerate the Loan when [d]efendant first failed to make the [Escrow Fund] payments" was to defendant's benefit not detriment.

The judge also addressed defendant's allegations about plaintiff's waiver of its entitlement to the escrow fund payments. He reviewed the contents of

Spirer's certification and ruled that the statements made in it about the conversation between Marzulli and the loan officer was inadmissible hearsay as Spirer "ha[d] no personal knowledge of the content of that conversation." Moreover, he noted that Spirer did not provide any additional documentation "memorializing [the Lender's] purported agreement to forego the requirement under the Loan Documents." Judge Mongiardo found that the loan documents were "fully integrated commercial obligations between sophisticated business entities[,]" and without more than "vague and unsupported references to [a] telephone conversation[,]" the defense fails. He also addressed defendant's remaining affirmative defenses and specified his reasons for finding that each defense failed.

Finally, Judge Mongiardo considered defendant's cross-motion. As to defendant's claim for reformation of a contract, he noted that defendant admitted to its default in the payments into the escrow funds and that defendant "does not dispute the express terms of the fully integrated Loan Documents." The judge held that "there is no mistake or ambiguity warranting reformation." He also found that defendant's assertion that plaintiff breached the covenant of good faith and fair dealing could not survive because "[p]laintiff did not act in bad faith by electing not to immediately accelerate the Loan[,]" especially since a

provision of the loan agreement provided that plaintiff had an "absolute right whether and when to elect or not elect to accelerate." Judge Mongiardo dismissed the remaining counts of the counterclaim as being without merit.

On May 12, 2016, defendant filed a motion for reconsideration, arguing that the judge "failed to consider significant probative evidence related to [d]efendant's defenses under the doctrines of [] breach of the covenant of good faith and fair dealing, equitable estoppel, and laches." Moreover, defendant alleged that there was new evidence for the judge to consider, which supported a "finding in [d]efendant's favor and a reconsideration of the" summary judgment order.

In his certification filed in support of the motion for reconsideration, Spirer reiterated that he spoke to a loan officer from plaintiff's predecessor and that he had other phone conversations with similar individuals regarding the loan. Spirer emphasized that "[a]t no time did any of the bank officers indicate that there was a problem concerning the missed escrow payments and it was [his] understanding . . . that no one viewed defendant as being in default."

Moreover, he stated that he did not refinance the loan because he believed he had until the March 1, 2016 loan maturity date to do so. Even though plaintiff's predecessor knew from annual audits that defendant maintained other

13

reserves, it never requested the funds be moved to cure any default in the escrow fund payments or indicated that the escrow funds' deficiency was an issue. He further certified that, although plaintiff's predecessor sent a letter "acknowledging" the missed escrow payments, no default was ever declared and thus, defendant continued making monthly principal and interest payments and did not move funds to cure the escrow deficiencies.

On June 21, 2016, Judge Mongiardo heard oral argument on the motion for reconsideration and on June 23, 2016 issued an order denying defendant's motion supported by a written decision. At oral argument, plaintiff contended that defendant failed to act on three separate occasions after receiving notice of default: once "in October 2013 when there was a delinquency notice, . . . [and an] email exchange between . . . Spirer and the loan officer" requesting payment; again "in March 2014 when the official default notice was served[;]" and finally when "they d[id not] do anything with regard to refinancing . . . until December 2015 . . . ." Defendant argued that it did not try to correct the default because plaintiff wanted it "to enter into some type of pre[-]negotiation agreement that was going to be governed under Florida law, . . . where [defendant] would [be forced to] agree to waive all [of its] rights and remedies against [p]laintiff . . . ."

14

In his written decision, Judge Mongiardo found that he "did not rely on plainly incorrect reasoning" nor "overlook any fact or law in rendering" his decision on the original motion to strike defendant's pleading. Moreover, he concluded that defendant could not "assert new theories on a motion for reconsideration that it could have but failed to assert at the time of the original motion[,]" and that any new evidence defendant presented to him "d[id] not persuade the [c]ourt to change its mind." The judge still found that defendant set forth the same arguments and saw "no reason . . . to grant [d]efendant a second bite at the apple."

On September 26, 2016, plaintiff filed its motion for entry of a final judgment of foreclosure. In response, defendant filed an objection to the amount due, arguing that late charges were improperly assessed against the monthly loan payments that were not in default, rather than the "missed Escrow Payments," and "the imposition of a default rate of interest [was] not reasonable under the totality of the circumstances of the case."

On December 12, 2016, Judge Mongiardo considered the parties' oral arguments as to defendant's objection to the amount due. In a written decision dated January 3, 2017, the judge explained why he found defendant's objections to be without merit. The judge stated that defendant's objection to the late

charges was resolved by an amendment to the amount claimed by plaintiff. As to the application of the default interest amount, the judge relied upon the Supreme Court's opinion in Metlife Fin. Corp. v. Washington Ave Assocs. LP, 159 N.J. 484 (1999) and our opinion in Mony Life Ins. Co. v. Paramus Parkway Bldg. Ltd., 364 N.J. Super. 92 (App. Div. 2003), and concluded that in this case: (1) the loan agreement between the parties governed the default rate of interest and accordingly, the amounts due; (2) defendant failed to meet its burden to prove that the default interest rate was unreasonable "either at the time the contract [was] made or at the time it [was] breached[;]" and (3) defendant "failed to show any unconscionable conduct on behalf of [p]laintiff."

On March 7, 2017, Judge Mongiardo entered the Final Judgment of Foreclosure in the amount of $5,645,175.13 plus taxes and counsel fees in the amount of $7,500. This appeal followed.

"In reviewing a grant or denial of summary judgment, [we are] bound by the same standard as the trial court under Rule 4:46-2(c)." State v. Perini Corp., 221 N.J. 412, 425 (2015) (citations omitted). "We must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Ibid.

16

(quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). In our review, we "must view the facts in the light most favorable to the non-moving party, which in this case is" defendant. Bauer v. Nesbitt, 198 N.J. 601, 604-05 n.1 (2009); see also R. 4:46-2(c); Brill, 142 N.J. at 540. Summary judgment is appropriate where the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)).

On appeal, defendant argues that Judge Mongiardo erred in granting summary judgment on the issue of "whether [plaintiff] violated the covenant of good faith and fair dealing." Relying on Wilson v. Amerada Hess Corp., 168 N.J. 236 (2001), defendant argues that plaintiff violated the covenant when it notified defendant that "it was no longer concerned whether [defendant] could fund the escrow reserves[,]" but later "declare[d] [defendant] to be in default under the Loan two years later for failure to fund [the] reserves." We disagree.

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577 (2011) (citing Kalogeras v. 239 Broad Ave., LLC, 202 N.J. 349, 366 (2010)). The covenant requires that "neither party shall do anything which will have the effect

of destroying or injuring the right of the other party to receive the fruits of the contract."  Ibid. (quoting Kalogeras, 202 N.J. at 366).  However, the implied covenant of good faith cannot "alter the terms of a written agreement" and therefore may not "preclude a creditor from exercising its bargained-for rights under a loan agreement."  Glenfed Fin. Corp., Commercial Fin. Div. v. Penick Corp., 276 N.J. Super. 163, 175 (App. Div. 1994) (citations omitted).

"A creditor's temporary forbearance in exercising its remedies upon its debtor's default does not preclude the creditor from subsequently exercising those rights," especially where, as here, the parties' loan agreement expressly preserved lender's right to determine whether, and when, to exercise its remedies for a default.  Id. at 177.  Absent some evidence that a lender's actions were "characterized by bad faith . . . [or that it was] acting out of personal malice towards [the debtor] or its principals, or that it was pursuing its own economic interests unrelated to obtaining the repayment of the loan[,]" a lender does not breach the covenant simply by holding a debtor in default under the terms of the loan agreement.  Nat'l Westminster Bank N.J. v. Lomker, 277 N.J. Super. 491, 497 (App. Div. 1994) (quoting Penick Corp., 276 N.J. Super. at 178).

Defendant's contention that plaintiff violated the covenant is premised upon plaintiff having waived its right to the escrow fund payments. We, like Judge Mongiardo, discern no such waiver.

First, pursuant to the loan agreement, any waiver must be in writing and signed by the party to be charged. Based on Bloom's certification in opposition to plaintiff's motion to strike, defendant contends that the account balance forms (Standard Forms) it received from the plaintiff's predecessor during 2012-2014 served as evidence that the parties reached an agreement concerning the escrow fund payments. According to defendant, because the forms contained "no reference to default interest" and they accounted for all interest "as paid [on the Notes] through September 1, 2014 (Note A) and February 1, 2014 (Note B), respectively," plaintiff waived its right to the payments. Defendant also asserts that plaintiff's "continued application of payments to [the] principal through at least February 3, 2016," and the fact that plaintiff "never provided [Judge Mongiardo] with evidence that it had actually been assessing default interest against [defendant] from April 1, 2012 further demonstrated a waiver of the interest." We disagree.

Waiver "'involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of his or her

19

legal rights and deliberately intended to relinquish them.'" Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008) (quoting Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988)). "Such a waiver must be done 'clearly, unequivocally, and decisively.'" Cole v. Jersey City Med. Ctr., 215 N.J. 265, 277 (2013) (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). Where a contract requires any waiver or modification to be in writing, we will enforce those unambiguous terms, absent clear conduct that the parties intended to waive the requirement for a writing. See Lewis v. Travelers Ins. Co., 51 N.J. 244, 253 (1968); Home Owners Constr. Co. v. Glen Rock, 34 N.J. 305, 316 (1961); Headley v. Cavileer, 82 N.J.L. 635, 637-39, (E. & A. 1912). Clear and convincing evidence is required to prove waiver of a writing requirement. Home Owners Constr. Co., 34 N.J. at 317.

Here, defendant failed to clearly and convincingly demonstrate that plaintiff waived its right to enforce the escrow fund payments or the loan agreement's requirement that any waiver or modification must be in writing. The Standard Forms confirming the existence of accounts or loan balances for audit purposes did not explicitly state that plaintiff was waiving any of its rights, or that plaintiff intended to modify the express provisions in the loan agreement requiring the escrow fund payments. In fact, they stated that plaintiff was not

20

expected to conduct a detailed search of its records before signing. By merely sending the forms to defendant to confirm the account information and balance of the loans and amount of the interest payments, plaintiff did not release defendant from any of its obligations under the loan documents.

We turn next to defendant's contentions about the inclusion of default interest to the amount Judge Mongiardo found was due under the notes. Default interest is "accepted as a means for lenders to offset a portion of the damages occasioned by delinquent loans." Metlife, 159 N.J. at 501. Default interest is assessed because "the actual losses resulting from a commercial loan default are difficult to ascertain." Mony Life Ins. Co., 364 N.J. Super. at 103 (citing Metlife, 159 N.J. at 501-02). It is meant to compensate the lender for the potential costs of administering a defaulted loan, the potential difference between the contract interest rate, and other damages. Metlife, 159 N.J. at 502. Like other "liquidated damages, . . . default interest rates, . . . are [enforceable] subject to the test of reasonableness, that is, whether the stipulated damage clause is reasonable under the totality of the circumstances." Mony Life Ins. Co., 364 N.J. Super. at 103 (citing Metlife, 159 N.J. at 493-95).

Defendant argues that the imposition of the default interest amount was "unconscionable," not because it was in the amount of five percent above the

notes' stated interest rates, but due to it being applied retroactively "to the period when the Lender became aware that a default occurred."  It contends that, because plaintiff cannot demonstrate actual damages for the period of time before it "became aware of the alleged default[,]" plaintiff is entitled to the increased interest rate.  Defendant also contends because plaintiff did not "exercise[] its right to . . . default interest[]" "for nearly two (2) years after [defendant] stopped making . . . escrow payments," plaintiff's claim is barred "under the doctrines of laches, equitable estoppel and unclean hands."

We conclude that defendant's arguments regarding default interest being unconscionable and plaintiff not being entitled to include it in the amount owed are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  Suffice it to say, an event of default occurred in this matter on April 1, 2012, when defendant failed to make payments due under the loan documents, and from that date the amount of default interest started to accrue.  Considering the amount of the loan, the default interest rate of five percent is neither punitive nor unreasonable, and was negotiated between sophisticated commercial parties, who were represented by counsel.  Judge Mongiardo did not err in including default interest in the final judgment amount.

A-3460-16T3

Finally, defendant argues for the first time on appeal that "the loan documents are ambiguous concerning the retroactive application of default interest." It contends that we should remand the matter so that Judge Mongiardo can conduct a plenary hearing to determine whether the loan agreement allowed for the retroactive application of default interest. Although plaintiff raised these arguments in its appellate brief, we will not consider them as they were not raised before Judge Mongiardo. We will not "'consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Neither situation exists here.

To the extent we have not specifically addressed any of defendant's contentions, we conclude they are also without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E)

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3460-16T3