JESSE W. BENEDICT *vs.* JAMES M. BENEDICT and others.

Complainant and defendant, being both residents of the city of New York, were both creditors of the firm of H. S. & Sons, also doing business in New York. Both had presented their claims, and obtained judgment in an attachment which had been sued out against the firm in this state, and by virtue of which the property of one of the firm, situate in this state, had been attached, but not sufficient in value to satisfy the claims of all the applying creditors under the attachment. The defendant was also a preferred creditor for the amount of his claim under an assignment executed by H. S. & Sons, in the city of New York, by virtue of which the assignee held assets enough to satisfy the claims of the creditors in the same class with the defendant, but not enough to pay the general creditors, of whom the complainant was one. Defendant also held other collateral securities for the payment of the same debt. On a bill filed by the complainant to restrain the defendant from receiving any dividend under the attachment until he had first exhausted his remedy under the assignment, and had resorted to the collateral securities held by him, it was *held*—

That the complainant had no equity to justify this court in arresting the proceedings under the attachment, or in interfering with the mode of distribution pointed out by the statute.

The rule of equity is well settled, that where one has a lien upon two funds, and another a subsequent lien upon one of them only, the former will be compelled first to exhaust the subject of his exclusive lien, and will be

permitted to resort to the other for the deficiency only. But the equity is a personal one against the debtor, and does not bind the paramount creditor nor the debtor's alienee for value.

It is an equity against the debtor himself that the accidental resort of the paramount creditor to the doubly charged estate, and the consequent exhaustion of that security, shall not enable him to get back the second estate discharged of both debts.

The objection to throwing the claim of the defendant upon the assignment for satisfaction is, that it cannot be done without prejudice to the claims of the creditors, who are entitled to share the fund under the assignment.

The statute of this state only prohibits preference of one creditor over another in a general assignment for the benefit of creditors, and not in any other form. Every debtor, by our law, has a right to prefer one creditor over another by mortgage, by judgment, or by any other mode than that which the statute prohibits, and such preferences, especially when made in favor of sureties or confidential creditors, are not regarded with disfavor or treated as inequitable.

As between citizens of New York, where preferences by assignment are allowed by law, no distinction can be made between the equitable character of the claims under the attachment and under the assignment.

On filing the bill in this case a preliminary injunction was allowed under the circumstances, which are stated in the Chancellor's opinion.

Defendant, having answered the bill, now moves to dissolve the injunction.

*I. W. Scudder* and *Bradley*, for the motion.

*Slaight* and *Zabriskie*, contra.

THE CHANCELLOR. The complainant and defendant are respectively creditors of the late firm of Horace Southmayd & Sons, merchants of the city of New York. On the first of April, 1861, the complainant caused an attachment to be issued out of the Circuit Court of the county of Hudson against the estate of the partners in said firm, as nonresident debtors. The attachment was served upon the real estate of Horace Southmayd, one of the partners. On the twentieth of April, 1862, judgment in the attachment was rendered in favor of the complainant, Jesse W. Benedict, for $2079.60, in favor of James M. Benedict for $48,407.45,

and in favor of numerous other creditors for various sums, amounting in the whole to $68,491, greatly exceeding in amount the estimated value of the real estate attached. On the twenty-fifth of April, 1861, the firm of Horace Southmayd & Sons made an assignment of all their partnership property, under the laws of the state of New York, for the benefit of their creditors, to Frederick H. Trowbridge, thereby giving preferences to various classes of creditors. James M. Benedict is a preferred creditor under that assignment, and the property assigned will be sufficiet t to satisfy his claim. The complainant is not a preferred creditor under the assignment. By the terms of the assignment, he is to be paid, in common with the general creditors, after the claims of all the preferred creditors are satisfied. The assets in the hands of the assignee will not be sufficient, after paying the preferred creditors, to satisfy the general creditors. The bill also charges that James M. Benedict is fraudulently confederating with Horace Southmayd & Sons for their benefit, and that he intends to accept payment both under the assignment and under the judgment in attachment. The bill also charges that other collaterals are held by James M. Benedict for the payment of the same debt, and that he is not entitled to come in under the assignment until he has exhausted his remedy upon those securities.

The bill asks that the defendant, James M. Benedict, be restrained from receiving any dividend under the judgment in attachment until the claims of the complainant and of other applying creditors under the attachment are satisfied, and that the assets of the firm be marshalled, and applied in satisfaction of the debts upon equitable principles.

The fact that the property attached is the individual property of one of the partners, and not the joint property of the firm, in no wise affects the rights or equities of the parties to this suit. Both the complainant and defendant are creditors of the firm. The separate estate of an individual partner is, by the express terms of the statute, made liable to an attachment for the recovery of a debt due from the partner-

ship, and is liable to be sold or assigned under the attachment for the payment of such joint debt. *Nix. Dig.* 42, §.42.

If any objection was designed to be raised to the form of attachment, this is neither the time nor the forum in which that objection, if it existed, can be made available. Judgment upon the attachment has been rendered, and the property made answerable to the claims of the creditors of the firm.

The only question now open for the determination of this court is, how is the money arising from the sale of the property attached to be distributed? The statute has, with great precision and minuteness, prescribed the time when, the manner in which, and the persons to whom the distribution shall be made. It directs, among other things, that the auditors "shall distribute among the said plaintiffs and creditors, equally and in a ratable proportion, according to the quantum or amount of their respective debts, as ascertained by the said report and the judgment thereon, all the moneys arising from the sale of the said goods and chattels, lands and tenements, first deducting legal costs and charges." *Nix. Dig.* 41, § 36.

Each petitioning creditor under the attachment has a judgment in his favor for his debt, which he is entitled to have satisfied out of the proceeds of the sale, so far as there are assets for that purpose. It is made the duty of the auditors so to distribute the fund. Will a court of equity so far interfere with the legal rights of the creditor as to prevent his receiving satisfaction of an admitted debt out of a fund raised by judicial proceeding ready to be paid over and especially appropriated to the satisfaction of that debt, and turn him round upon a mere question of equity to seek his remedy by legal process upon his collaterals or by proceeding in a foreign jurisdiction? Can this be done without an unwarrantable infringement of his legal rights? Even if this be admissible in the case of a judgment creditor, where the rights of a single creditor are involved, will the court, upon a principle of sound public policy, arrest the proceedings in attachment and the

distribution of the fund among the creditors upon questions of equity arising between individual creditors?

It would seem that the utmost, under such circumstances, the complainant could ask would be to be subrogated to the rights of the defendant, his claim being first satisfied in full. But that relief the complainant does not ask and cannot have. The whole frame of the bill rests upon the assumption that, if James M. Benedict comes in under the attachment, none of the creditors claiming under the attachment can receive their claims in full. Unless his claim is satisfied in full he cannot be asked to surrender his securities, nor can the complainant claim to be subrogated to his legal rights. What the complainant does ask is, that the defendant shall be compelled to apply first the proceeds under the deed of assignment made for the benefit of creditors in New York, and of the several collateral securities in his hands, to the payment of his claim before resorting to the attached property or the funds in the hands of the auditors, and that he shall be permitted to claim from the auditors a dividend only upon such part of his claim as shall not be satisfied by the said securities, or that the said securities shall be marshalled in such manner as to secure to the complainant and the other judgment creditors under the attachment the full benefit and advantage *pro rata* of the said securities.

This end cannot be attained in the mode proposed without driving James M. Benedict to sue upon his collaterals, delaying him in the receipt of his money, compelling him to incur the hazard, expense, and delay of litigation, and at the same time arresting the proceedings in attachment and the distribution of the funds by the auditors for an indefinite and uncertain period, until the suits upon the collaterals and the proceedings under an assignment in a foreign jurisdiction may be eventually settled.

When the injunction was issued I was not without apprehension that this measure would be an unwarrantable interference with the proceedings under the attachment, in conflict with the policy of the law and a violation of the rights of

the other attaching creditors.   There are cases, I am aware, that sustain this proceeding, so far as it may affect the rights of James M. Benedict alone, though even upon this point the authorities are in conflict.   *Adams' Eq.* 372, *note* 2, and cases there cited; 2 *Leading Cases in Eq.* 276—279.

But I am not aware of any authority which sanctions the extent of power which the court is asked to exercise in this cause, nor do I perceive any principle upon which it can be sustained.   But if this objection be unfounded, and the right of the complainant to claim the interference of the court for the protection of his rights be clear, has he any equity which entitles him to the relief asked for ?

The first ground of relief is, that the defendant is a preferred creditor under the assignment in New York, and that his claim is secured upon that fund.   The rule of equity is well settled, that where one has a lien upon two funds, and another a subsequent lien upon one of them only, the former will be compelled first to exhaust the subject of his exclusive lien, and will be permitted to resort to the other for the deficiency only.   But the equity is a personal one against the debtor, and does not bind the paramount creditor nor the debtor's alienee for value.

It is an equity against the debtor himself, that the accidental resort of the paramount creditor to the doubly charged estate, and the consequent exhaustion of that security, shall not enable him to get back the second estate discharged of both debts.   *Adams' Eq.* (*ed.* 1859) 585.

But it is clear that the debtor in this case cannot get back the estate held under the assignment discharged of either debt.   That estate in the hands of the assignee, after the satisfaction of the claim of James M. Benedict, is charged with all the debts of the firm of Southmayd & Sons, including the debt of the complainant himself.   The debtors cannot get back the estate, nor derive any benefit from the fund assigned, until all their debts are paid in full.   This difficulty appears to have presented itself to the mind of the draftsman of the bill, and, as if to avoid it, he charges a fraudulent combina-

tion between Benedict and the debtors, in pursuance of which the former is to receive the benefit of both funds, and turn them over to the debtors. But the court will not presume a gross breach of duty by the assignee in New York. Benedict clearly cannot be paid twice. If he receives his share of the fund under the attachment in part payment of his claim, it will diminish by so much his claim to a dividend under the assignment. It must be presumed that the courts of New York, to whose jurisdiction and control the assignee is subject, will compel the performance of his duty, or hold him responsible for its breach. The equity, therefore, which is asked to be enforced against the debtors, if enforced in the manner proposed, will affect not the debtors but their alienees for value. It will affect the general creditors of Southmayd & Sons under the assignment, creditors in equal degree with the complainant, and for whose benefit the fund was assigned. *Adams' Eq.* 272, and cases cited in note; 2 *Leading Cases in Eq.* 221; *McGinnis' Appeal,* 16 *Penn. St. R.* 445.

In considering this question, it must be assumed that the assignment made by the debtors for the benefit of their creditors in the state of New York is a valid and legal assignment under the laws of that state, and that all its provisions are in accordance with the recognized principles of law and equity which there prevail. The debtors had a right, by their assignment, to make preferences among their creditors, to prescribe the order of priority in which the creditors should be paid, and the amounts they should respectively receive. These provisions the trustee is bound to carry into effect. The terms of the assignment are the law of the trust, which the trustee must respect. They regulate the rights of the several classes of creditors under the assignment. These preferences are for the purposes of this case not to be regarded as inequitable. Our statute has indeed prohibited all preferences of one creditor over another in a general assignment for the benefit of creditors. But it does not prohibit it in any other form. Every debtor, by our law, has a right by the transfer of property by mortgage, by judgment, or in any

other form, except by general assignment for the benefit of creditors, to prefer one creditor over another; and these preferences, especially when made in favor of confidential creditors or mere sureties, are not regarded with disfavor or treated as inequitable. No distinction, therefore, can be made between the equitable character of the claims under the attachment and under the assignment, especially as between citizens of the state of New York, where the assignment is made.

The decided objection to throwing the claim of the defendant upon the assignment for satisfaction is, that it cannot be done without prejudice to the claims of the creditors who are entitled to share the fund under the assignment.

It will operate to the prejudice either of the creditors in the same class with the defendant, or, if there be funds sufficient to satisfy those claims in full, it will operate to the prejudice of the general creditors, who are in the next class, and are not preferred. They have equal equities and an equal claim to protection with the creditors under the attachment, and I perceive no ground upon which the claim of the defendant can be thrown exclusively upon that fund to their prejudice. All that the complainant can ask is that the defendant shall not receive his pay twice, or use it for the benefit of the debtors. That result is secured by the terms of the assignment. The creditors entitled under it can receive a dividend only upon what may remain due after deducting from their respective claims the amount received upon their collateral securities.

If the complainant was a citizen of this state, complaining of the effect of the assignment in a foreign jurisdiction, alleging that it operated in evasion of our statute, and to the prejudice of his interest, and claiming to have the funds administered in this state for his benefit, a different case would be presented for consideration. But it is unnecessary to consider the case in this aspect. The complainant and defendant are both citizens of New York. Neither can complain that the funds are removed to the jurisdiction of the state in

VOL. II. O

which they are both domiciled, or that the adjudication of their rights are left to the judicial tribunals of that state.

If there be any equity whatever in this bill, it must rest upon the charge of actual fraud. That charge is fully denied by the answer.

The injunction is dissolved with costs.