Complainant, the commissioner of banking and insurance of the Commonwealth of Pennsylvania, has filed a bill to foreclose two mortgages, one in the sum of $50,000 and the other in the sum of $45,000, covering contiguous premises on Pacific avenue, in the city of Atlantic City, New Jersey. The original bonds and mortgages were made by one Shapiro to the Weinmann Finance Corporation and assigned by that company to the National Bank of Commerce of Philadelphia, to secure a loan of $75,000, and that bank also took, as additional security for said loan, three separate indemnity agreements or guarantees, signed by one Weinmann, Saul and Lindenheim, which provided as follows:
"I, the undersigned, hereby guarantee * * * the punctual payment of all loans, discounts, credits or advances, made or to be made, to Weinmann Finance Corporation by the said bank * * *. Provided, however, that the aggregate amount for which the undersigned shall be liable at any one time shall not exceed the sum of $75,000."
The Bank of Commerce was merged with the Bankers Trust Company of Philadelphia, which company became insolvent and was taken over by complainant. *Page 296 
The only answering defendants are several members of the Arata family, herein referred to as the Aratas, and they are judgment creditors of the Weinmann Finance Corporation, and the owners of the equity of redemption in the mortgaged premises, they, the Aratas, having purchased the property at a judicial sale at a time when complainant's mortgages were of record against the property, said sale having been as a result of an execution on a judgment held by the Aratas against the Weinmann corporation.
We thus have this situation confronting us: The complainant is the absolute owner of the two mortgages in foreclosure. It has, in addition thereto, the three individual guarantees above enumerated, and the Aratas are the owners of the property in question by reason of the purchase at a judicial sale. The Weinmann corporation is a common debtor of both complainant and the Aratas. The three individual indemnitors or guarantors of complainant are not the debtors of the defendants Arata.
In this statement of fact we are confronted with an exception to the general rule as to marshaling of assets:
"The general rule is, that if one creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only, * * * the former must seek satisfaction out of that fund which the latter cannot touch." Pom. Eq. Rem. (2d ed.) §2288.
The same author then sets forth several exceptions to the general rule, inter alia:
"In order to obtain the relief, the parties must be creditors of the same debtor, and both funds must belong to one debtor."Pom. Eq. Rem. (2d ed.) § 2291.
As is above set forth, both complainant and the Aratas are the creditors of the same debtor (Weinmann corporation) but both funds do not belong to the same debtor, i.e., one "fund" is the property covered by the mortgages in suit and the other "fund" are the three guarantees or indemnity agreements.
In addition to Professor Pomeroy's statement of the law that both funds must be derived from a common source or *Page 297 
be in the hands of a common debtor, the following additional authorities are cited:
"It is a well established qualification of the general rule (of marshaling) that * * * both funds must be derived from a common source, or be in the hands of a common debtor." 39 L.R.A.
(N.S.) 1000.
"The rule of marshaling does not prevail except where both funds are in the hands of the common debtor of both creditors."38 C.J. 1374.
"If the two funds to which creditors or sets of creditors may resort are not derived from a common source, or are not in the hands of a common debtor, there can ordinarily be no marshaling of assets." 18 R.C.L. 460 § 9.
The facts in the case at bar do not come within the principle laid down in the above quoted authorities. One fund, the mortgaged premises, is derived from the Weinmann Finance Corporation alone, and the other, the guarantee of Weinmann, Saul and Lindenheim (if to be considered as a fund) is derived from those individuals who are separate debtors and, therefore, the common debtor cannot have both funds, nor are they now or have they ever been derived from the same source.
The further facts adduced by the evidence brings us to another obstacle in the way of the defendants. These facts are, that the only evidence in the case is to the effect that an investigation disclosed that the three guarantors above mentioned are without financial responsibility, even if suit were brought against them, as demanded by the defendants.
Professor Pomeroy, continuing his exceptions to the general rule above quoted, in his book on Equitable Remedies, second edition, section 2289, says:
"Relief will not be given if it will delay or inconvenience the paramount encumbrancer in the collection of his debt, or prejudice him in any manner; for it would be unreasonable that he should suffer because some one else has taken imperfect security.
"Thus relief has been denied where the fund to be resorted to has been dubious, or one which might involve the creditor *Page 298 
in litigation; and a mere personal remedy has been held insufficient to warrant interference."
In 18 R.C.L. 462 § 10, the same rule is stated:
"The court will never marshal securities to the prejudice of the prior creditor, or so as to put his claim in jeopardy, or on any other terms then giving him complete satisfaction."
The result is that under the only evidence in the case, to drive complainant to suit on the guarantee or indemnity agreements would not only violate the rule above stated but would be futile and inequitable.
The rule above quoted has been followed in the case ofBenedict v. Benedict, 15 N.J. Eq. 150, in which case (at p.154), Chancellor Green said:
"This end cannot be attained in the mode proposed without driving James M. Benedict to sue upon his collaterals, delaying him in the receipt of his money, compelling him to incur the hazard, expense, and delay of litigation, and at the same time arresting the proceedings in attachment and the distribution of the funds by the auditors for an indefinite and uncertain period.
Chancellor Green followed and quoted as authority Professor Pomeroy, and the facts in the case sub judice clearly demonstrate that not only would complainant be delayed and put to the hazard and expense of bringing suit on the indemnity agreements, but that any judgment that might be obtained would be uncollectible.
The next situation which confronts defendants and which, in my mind, prevents the relief which they seek, is that they became the owners of the equity of redemption by purchase at a judicial sale. This purchase came about under rather peculiar circumstances, the nature of which defendants say relieve them from the category of "purchasers for value in the sense of one who goes into the open market and buys a property for a fixed price, subject to liens." Let us examine this contention and deal with the law afterward.
The Aratas foreclosed a mortgage against the Weinmann corporation, which mortgage covered premises other than those the subject of the present foreclosure, and the Aratas got a *Page 299 
deficiency judgment against the Weinmann corporation. The Weinmann corporation, being the owner of the second mortgage on the premises covered by the present complainant's mortgages, foreclosed its second mortgage and, in order to conceal its assets from the Aratas, at the foreclosure sale of its second mortgage, had a Miss Moore, a clerk in the office of the Weinmann corporation, bid in the property and caused title to be taken in her name. The Aratas thereupon filed a bill in this court setting up the fraud on the part of the Weinmann corporation and a decree was entered in that suit declaring the title held by Miss Moore as trustee for the Weinmann corporation and that Miss Moore had no beneficial interest therein; whereupon the Aratas issued execution on their deficiency judgment and at the sale thereunder purchased the property the subject of this suit.
The Aratas were in no different position at this sale than they would have been had the Weinmann corporation not endeavored to conceal their ownership of the property. If the Weinmann corporation had, in the first place, taken title in their own name, the Aratas would have been compelled to sell the property under their judgment and become the purchasers thereof, the only difference being the intervention of the chancery suit of the Aratas against the Weinmann corporation. True, the defendants could have allowed their judgment to lie dormant and not have sold under execution, but that would also have been true had the Weinmann corporation taken title in their own name instead of the name of their clerk.
So that the Aratas stand in the position of a purchaser of the equity of redemption of the locus in quo at a judicial sale and a purchase subject to complainant's two mortgages, and the question is — may they now require complainant to resort to security other than the mortgaged premises, i.e., the three indemnity or guarantee agreements? The law seems to be well settled that they may not. Professor Pomeroy in his work on Pom.Eq. Rem. (2d ed.) 5083 § 2291, says, "nor is the doctrine applicable as between a purchaser of an equity of redemption and a prior mortgagee." This authority has been *Page 300 
approved in a number of cases in this state. Sternberger v.Sussman, 69 N.J. Eq. 199; Krueger v. Ferry, 41 N.J. Eq. 432;Harron v. Du Bois, 64 N.J. Eq. 657.
In Krueger v. Ferry, the court (at p. 437), held:
"By their purchase they acquired a right to redeem the land from the debt for which it stood pledged by paying the debt, but having acquired merely an equity of redemption, and paid for that alone, and not the full value of the land, they stand without the least right to call upon the court to apply any other fund to the payment of the mortgage debt in exoneration of their estate. They took title to the land subject to the burden of the mortgage, and they must therefore either pay the mortgage themselves, or suffer the land to be sold for its payment.
"The defendant Du Bois, as purchaser at the judicial sale, took the vacant lots burdened with the then existing charges, and has no status which enables him to escape by shifting them to other property in which he has no interest."
In Stevens v. Church, 41 Conn. 369, the court said:
"The principles of equity in regard to the marshaling of securities are not applicable to the case of a mortgagee and a subsequent purchaser of the equity of redemption; but are confined to cases where two or more persons are creditors of the same debtor, and have successive demands upon the same property, the one prior in right having other securities * * *. As purchaser he took what he purchased — the equity of redemption, and nothing more."
Another point is urged by complainant against the right of defendants to the relief sought. Complainant says that the three individuals against whom defendants want complainant to proceed were guarantors and as such entitled to be subrogated to the securities held by the complainant in the event that these guarantors paid the indebtedness of the Weinmann corporation and that, threfore, the defendants, herein would take nothing even were they successful in their demand that the securities be marshaled.
This is under the theory of the case of Jenkins v. Smith,48 N Y Supp. 126. *Page 301 
The defendants' contention is that the three agreements signed by the three individuals were mere indemnity agreements and that, therefore, the indemnitors are not entitled to be subrogated in the event of payment.
The question of whether the agreements were indemnity or guarantee agreements may be decided under the principles laid down in Wilkinson-Gaddis Co. v. Van Riper, 63 N.J. Law 394, and Pfeiffer v. Crossley, 91 N.J. Law 433, and the agreements, construed with the rules therein laid down, are individual contracts to pay and not contracts guarantying collection simply. They were undertakings on the part of the three indemnitors to pay up to the sum of $75,000 if the Weinmann corporation did not pay, but whether they were called guarantors, indemnitors or whatnot, had they paid the debt of the Weinmann corporation, as evidenced by the collateral note of $75,000, in equity they would have been subrogated to the rights of the complainant, i.e., the collateral which it held. The first authority for this proposition is 5 Pom. (2d ed.) 5184 §2345:
"Whenever a party discharges an obligation in performance of a legal duty — that is, an obligation for the performance of which he was legally bound — but for which his liability was subsequent to that of another party, he is entitled to be subrogated to, and to have the benefit of, all rights of the creditor and all securities which may at any time have been put into the creditor's hands by a party whose liability is prior to his own, or which the creditor may have obtained from such party."
This text is supported in our state by Vice-Chancellor Foster in Hackensack Brick Co. v. Mayor, c., of Bogota, 86 N.J. Eq. 143:
"The right of subrogation does not depend on any privity of contract, but is independent of any agreement, and rests upon principles of natural justice and equity."
Surely natural justice and equity would require that the three indemnitors or guarantors be subrogated in the event they paid the Weinmann corporation's indebtedness. The underlying principle of the theory of marshaling the assets *Page 302 
is equity as between the parties involved, and where it clearly appears that equity will not be done, the relief is denied, and in this case it does clearly appear that it would be inequitable to compel the complainant to resort to an action at law on the indemnity agreements which it holds, the indemnitors being insolvent, and where it further appears that the indemnitors would be subrogated to the securities held by complainant.
Defendants rely on the case of Halkett v. Young, 73 N.J. Eq. 10,
and it will be noted that Professor Pomeroy in 4 Pom.
(4th ed.) § 1414, criticizes the authority of this case. However that may be, I am bound by it and recognize it as being the law of this state, irrespective of the criticism of Professor Pomeroy, nor do I think that my findings are in any way contrary to that decision.
I will advise a decree for complainant.