**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1976-17T1

ROSEMONT PROPERTIES, LLC,

     Plaintiff-Respondent,

v.

IP REALTY, LLC, ISRAEL
PERLOW, ESTHER PERLOW,
SHIMON GINSBERG, and
AMBOY BANK,

     Defendants,

and

THE CITY OF JERSEY CITY,

     Defendant-Appellant.

_____

         Argued January 29, 2019 – Decided July 8, 2019

         Before Judges Rothstadt and Gilson.

         On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. F-022911-15.

Elliott J. Almanza argued the cause for appellant (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Keith A. Bonchi, of counsel and on the briefs; Elliott J. Almanza, on the briefs).

Michael V. Capellupo argued the cause for respondent (Kriss & Feuerstein, LLP, attorneys; Michael J. Bonneville and Michael V. Capellupo, on the brief).

PER CURIAM

This commercial foreclosure action presents a dispute between creditors. Defendant, the City of Jersey City (the City), was a second mortgagee of the foreclosed property, while plaintiff, Rosemont Properties, LLC (Rosemont), held a senior first mortgage. The City appeals from the Chancery Division's December 5, 2017 rejection of its objection to the amount due to plaintiff. On appeal, the City contends that the trial court judge erred by not reducing the amount due to Rosemont by the value of a Lakewood property that Rosemont released from its lien, which was owned by one of the principals of their mutual borrower and his spouse. In the alternative, it argues that the Chancery judge should have applied the "two funds" doctrine to the City's claim. It also contends that the judge should not have incorporated a default interest rate into the amount owed to Rosemont and that he used the wrong date for calculating when the mortgagor defaulted. For the reasons that follow, we affirm.

I.

Rosemont and the City were creditors of defendant, IP Realty, LLC (IPR), whose principals are defendants Shimon Ginsberg and Israel Perlow, the husband of defendant Esther Perlow. IPR owned the subject property that was located in Jersey City. The property was improved by a multi-family residential building.

In June 2008, Rosemont lent $600,000 to IPR. In exchange for the loan, IPR delivered a promissory note to Rosemont that was secured by a mortgage on the Jersey City property, as well as a mortgage on the Perlows' Lakewood property. At the time, the Lakewood property was vacant, but was later improved with a home in which the Perlows resided. The note and two mortgages were signed by Ginsburg and Israel Perlow on behalf of IPR, and by both Perlows individually.

The note given to Rosemont carried an eleven and one-half percent interest rate and was to mature on June 30, 2009. It also provided for a default interest rate of twenty-four percent if the loan was not timely paid. Moreover, in the event of a default, a cross-collateralization provision in the parties' agreement allowed Rosemont, in its sole discretion, to foreclose on one or both of the properties in any order.

In June 2009, IPR defaulted when it stopped making any payments towards the principal owed in accordance with its note. However, IPR continued making interest-only payments until May 2014.

A-1976-17T1

While IPR was in default, in July 2010, the City lent IPR $494,105 so that six units in the building on the Jersey City property could be developed into affordable housing. In connection with that loan, IPR delivered to the City a second mortgage on the Jersey City property, subordinate to Rosemont's first mortgage. The note was signed only by Israel Perlow on behalf of IPR. Four years later, in March 2014, the City and IPR entered into a loan modification that reflected additional funding from the City. As a result of the modification, the amount of the City's loan increased to $673,105. According to the City's real estate officer, the City believed its loan was adequately protected because it understood that IPR had received additional private financing to assist with the needed improvements to the building.

As it turned out, in May 2014, the Jersey City property was substantially damaged in a fire. Afterward, IPR made no payments on either loan. At the time of the fire, the property was insured and initially, the City received $604,036.63 from the insurance proceeds.

In June 2015, Rosemont instituted this foreclosure action and this action seeking to recover the insurance proceeds paid to the City.[1] In March 2016, in response to Rosemont's motion for summary judgment, the parties entered into a

---

[1] The complaint also named as a defendant Amboy Bank, a defendant in this action as well. Amboy Bank held a judgment against Israel Perlow, which was a lien against the Lakewood Property. The bank filed an uncontesting answer.

settlement order.  Under that settlement (1) the City agreed to remit the insurance proceeds to Rosemont; (2) Rosemont agreed to forbear from moving for final judgment until December 1, 2016; (3) Rosemont agreed to discontinue the foreclosure action if IPR, the Perlows, and Ginsberg paid $75,000 before December 1, 2016; (4) the City and the remaining defendants agreed to withdraw their answers; and (5) the foreclosure action was to proceed as "uncontested."

In accordance with the settlement order, the City turned over to Rosemont the insurance proceeds, but neither IPR, nor the Perlows, nor Ginsberg ever paid the $75,000.  Despite their default, on January 27, 2017, Rosemont discharged its mortgage against the Lakewood property only.  According to Rosemont's managing member, plaintiff received no consideration for the release.

Rosemont decided to release the lien because it believed that after application of the insurance proceeds, the value of the Jersey City property would be sufficient to secure repayment of the amount that a court would likely order in a final judgment. Rosemont also agreed to the discharge as an act of goodwill because the Lakewood property was by then the Perlows' residence.  According to the City, at the time, the Lakewood property was valued at $1,250,000 and the Jersey City property's value was $400,000, although Rosemont disputed those values.

In April 2017, Rosemont moved for a final judgment, seeking an order fixing the amount due under the terms of the loan as $1,050,000, including default interest. In response, the City filed its objection and moved to reopen discovery in order to investigate the bona fides of Rosemont's discharge of the Lakewood mortgage.

Specifically, the City sought to discover whether plaintiff received any consideration for the release of the Lakewood mortgage and argued that the release jeopardized its security interest in the Jersey City property. The City asked the judge to provide a credit against plaintiff for the value of the Lakewood property, or alternatively, to reinstate the mortgage and require its sale under the "two funds" or "marshalling" doctrine. The City also objected to plaintiff's delay in filing this action, as well as the "exorbitant default-rate interest."

Judge Barry P. Sarkisian granted the City's motion to reopen the case for discovery, but reserved judgment on the merits. Accordingly, on June 29, 2017, the judge entered an order denying Rosemont's motion for final judgment.

After the discovery was completed, Rosemont refiled its motion for final judgment. The parties appeared for oral argument before Judge Sarkisian on December 1, 2017. The City renewed its earlier arguments about the "two funds" doctrine, and its objection to the default interest rate, contending that it was an

"unenforceable penalty" because plaintiff was willing to accept $75,000 to satisfy the mortgage in 2016, but now sought a judgment for over one million dollars.

The City also challenged the date that Rosemont used for the commencement of the default interest rate's application. It argued that interest began accruing in May 2014, rather than the note's June 30, 2009 maturity date as used by Rosemont because Rosemont continued to accept interest-only payments post-maturity. According to the City, by accepting those payments, Rosemont waived the loan documents' provisions that required modifications to be made only in writing. The City also presented a 2015 payoff statement that Rosemont provided it, reflecting the note's regular, non-default rate of eleven and one-half percent interest to establish that Rosemont waived its right to any default interest until May 2014, when payments stopped. Plaintiff contended that it did not extend the maturity date and that its failure to demand payment of interest at the default rate in 2015 did not waive its right to later collect such interest.

On December 5, 2017, Judge Sarkisian entered the order fixing the amount due as demanded by Rosemont and rejecting the City's objection to the entry of final judgment based on that amount. In his accompanying Statement of Reasons, the judge first summarized the parties' history and positions. He turned to the City's contention that it was entitled to a credit for the value of the Lakewood property.

Citing to <u>Hoy v. Bramhall</u>, 19 N.J. Eq. 563, 571 (E & A 1868), the judge observed that "where a mortgagee, . . . releases that part which is primarily liable . . . for the payment of the mortgage debt, he cannot . . . charge other portions of the premises with the payment of the mortgage, without deducting from the amount due, the value of the part released." However, the judge held that it would be inequitable to credit the value of the Lakewood property because, unlike in <u>Hoy</u>, plaintiff received no consideration for the release. Additionally, discovery revealed that Rosemont had originally intended for the Jersey City property to be primarily liable for the payment of the debt, and the City had "constructive notice" that plaintiff had a right to pursue its remedies solely against either property. Therefore, "the clear demands of natural justice and equity" would not be served by crediting the value of the Lakewood property.

Second, the judge addressed the City's request to reinstate the Lakewood mortgage under the doctrine of marshalling, or "the two funds" doctrine. The City argued that the Rosemont mortgages had a "common debtor" because the signatures of all parties appeared on both mortgages and because they arose out of a single transaction. However, the court noted that for the doctrine to apply under <u>Gordon v. Arata</u>, 114 N.J. Eq. 294, 296 (Ch. 1933), "the parties must be creditors of the same debtor and both funds must belong to one debtor," which was not the case here.

Here, the Lakewood property was owned by the Perlows and the Jersey City property was owned by IPR. Although Israel Perlow was a member of IPR, there was nothing to suggest that IPR or Ginsberg had any interest in the Lakewood property. The judge rejected the City's contention that the fact that the Jersey City and Lakewood mortgages arose from a single transaction entitled the City to a credit for the release of the Lakewood property.

Third, the judge addressed the City's argument that the default interest rate was an unreasonable penalty and that plaintiff unnecessarily delayed prosecuting the action. The judge found the rate reasonable because default interest rates are presumed reasonable and the City presented no proof of the rate's unreasonableness. The judge was not persuaded that plaintiff's willingness to accept $75,000 under the settlement order was evidence that the rate was unreasonable. Additionally, the judge found the City's argument to be an attempt to shift its burden to plaintiff. The judge also found that plaintiff's four-month delay in filing its motion for final judgment was not unreasonable, and laches did not apply.

Finally, the judge addressed the parties' disagreement over the loan's maturity and due date. While acknowledging that a contract provision requiring written modification may be waived by the parties' conduct or agreement, the judge found that interest began accruing on the June 30, 2009 maturity date and that there was

no evidence of a "clear, unequivocal and intentional relinquishment" of plaintiff's right to collect default interest as of that date. Any communication between the parties constituted a temporary forbearance agreement.

After Judge Sarkisian rejected the City's objection and fixed the amount due, Judge Paul Innes later entered the final judgment of foreclosure on December 20, 2017. This appeal followed.

## II.

"Foreclosure is an equitable remedy governed by the operation of traditional equitable principles . . . ." Customers Bank v. Reitnour Inv. Props., LP, 453 N.J. Super. 338, 348 (App. Div. 2018) (quoting U.S. Bank v. Curcio, 444 N.J. Super. 94, 113 (App. Div. 2016)). "Because equitable remedies are largely left to the judgment of the court, which has to balance the equities and fashion a remedy, such a decision will be reversed only for an abuse of discretion." Ibid. An "abuse of discretion" occurs "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). However, in our review for an abuse of discretion, we will not defer to a trial court's conclusions of law or the legal consequences that flow from established facts as issues of law are reviewed de novo. Cherokee LCP Land, LLC v. City of Linden Planning Bd., 234

N.J. 403, 414-15 (2018) (citing <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

## A.

We begin our review by addressing the City's contention that Judge Sarkisian should have reduced the amount due to Rosemont by the value of the Lakewood property. As already noted, Rosemont's loan was secured by mortgages on the two subject properties, and pursuant to a cross-collateralization clause in its agreement with IPR and the Perlows, Rosemont had the right, upon default, "to exercise its remedies against each of the properties in any such order determined by [Rosemont] or to foreclose simultaneously on both properties." The City contends that despite that provision and the fact that Rosemont did not receive any consideration for the discharge of the Lakewood mortgage, the City should have benefited by essentially wiping out the priority of Rosemont's Jersey City mortgage. We disagree.

As Judge Sarkisian observed, the "credit doctrine" as argued by the City gives a second mortgagee "the benefit of a release," but only applies where a mortgagor conveys part of the mortgaged property to another.

In <u>Hoy</u>, the senior mortgagee released part of the mortgaged premises for consideration. The court held that under those circumstances, the second mortgagee

A-1976-17T1

was entitled to a credit for the consideration received by the first lien holder against the amount due on foreclosure. The court stated the following:

> Where a mortgagee, with [knowledge of a second encumbrance and] notice of several successive alienations of parts of the mortgaged premises, releases that part which is primarily liable in equity for the payment of the mortgage debt, he cannot be permitted to charge other portions of the premises with the payment of the mortgage, without deducting from the amount due, the value of the part released.
>
> [Hoy, 19 N.J. Eq. at 571.]

"The rule is . . . that if a prior mortgagee releases part of the mortgaged premises, to the prejudice of a subsequent encumbrancer or purchaser with notice of such subsequent mortgage . . . his release operates as a discharge of his lien," equal "to the . . . value of the land released." Cogswell v. Stout, 32 N.J. Eq. 240, 241 (Ch. 1880).

Applying those principles, we conclude that Judge Sarkisian correctly determined that the doctrine's application here was clearly not warranted. At no time did the City hold any interest in the Lakewood property nor did IPR ever convey any interest in the Jersey City property that would trigger application of the doctrine. In addition, the cross-collateralization clause in Rosemont's agreement with IPR and the Perlows did not require it to proceed against the Lakewood property before the Jersey City property. As there was also no agreement between Rosemont and the

City, and the City made its loan to IPR with knowledge of the Rosemont loan, the City had no right to limit Rosemont's actions. See Meadowlands Nat'l Bank v. Court Dev., Inc., 192 N.J. Super. 579, 583 (App. Div. 1983) (finding a junior lien holder's interest in its borrower's contract with a purchaser of a portion of the mortgaged premises to be at best "incidental" and not entitling it to relief). Finally, the City produced no evidence that Rosemont's decision to discharge the Lakewood mortgage was the result of any nefarious endeavor to defraud the City or interfere with its rights. Under these circumstances, we have no reason to disturb Judge Sarkisian's decision.

We reach a similar conclusion concerning the City's argument under the "two funds" or marshalling doctrines that the trial judge erred in not reinstating the discharged Lakewood mortgage and compelling its sale prior to the sale of the Jersey City property. The City contends that Judge Sarkisian interpreted the requirement that the properties must have a common debtor too narrowly. According to the City, because the funds here were derived from a common source, the doctrine should apply. We disagree.

"Marshaling is the general equitable principle that one who has a lien on a single property may compel one who has a superior lien on the same property and on another property, to first resort to the property which is not incumbered for the

A-1976-17T1

satisfaction of his claim." Johnson v. Lentini, 66 N.J. Super. 398, 409 (Ch. Div. 1961). This doctrine obviously cannot be applied, however, when the other asset is also owned or liened by parties other than the debtor. See In re Maimone, 41 B.R. 974, 984 (Bankr. D.N.J. 1984). For the doctrine to apply, "the parties must be creditors of the same debtor, and both funds must belong to one debtor." Gordon, 114 N.J. Eq. at 296. The common debtor must hold both of the subject properties. Id. at 297. "If the two funds to which creditors or sets of creditors may resort are not derived from a common source, or are not in the hands of a common debtor, there can ordinarily be no marshaling of assets." Ibid.

In this case, the City held a mortgage only on IPR's Jersey City property and the Perlows never borrowed any money from the City or guaranteed its loan to IPR. Therefore, the City was not entitled to the benefit of this rule. Contrary to the City's argument, the fact that Rosemont's Lakewood mortgage was the result of Rosemont's Jersey City loan does not alter the rule's application. Without commonality of debtors, the application of the "two funds" or marshalling doctrines was inapposite.

B.

Next, we consider the City's challenge's to Judge Sarkisian's including in the amount owed to Rosemont the default interest rate provided for in Rosemont's loan agreement with IPR. While acknowledging that default interest rates must be

reasonable and that the party challenging such rate bears the burden of proving its unreasonableness, the City contends that, here, the default interest rate "went far beyond reasonably compensating [plaintiff] for any losses." It argues that the default interest's excessiveness is evident from the one-year term of plaintiff's loan and its willingness to accept $75,000 in satisfaction of the mortgage. It rejects the trial judge's determination that its argument was actually an attempt to shift the burden of proof to Rosemont because the difference in amount "is compelling evidence that the default interest rate goes well beyond recompensing it for any theoretical losses it may have sustained." The City argues that it did not need to present expert testimony on this issue because "the record amply demonstrated how Rosemont stood to reap a windfall." We find no merit to the City's contentions.

Default interest "provisions in a commercial contract between sophisticated parties are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." Metlife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P., 159 N.J. 484, 496 (1999). Default interest is "accepted as means for lenders to offset a portion of the damages occasioned by delinquent loans." Id. at 501. It is assessed because "the actual losses resulting from a commercial loan default are difficult to ascertain." Mony Life Ins. Co. v. Paramus Parkway Bldg., Ltd., 364 N.J. Super. 92, 103 (App. Div. 2003) (citing Metlife, 159 N.J. at 501-02).

It is meant to compensate the lender for the potential costs of administering a defaulted loan, the potential difference between the contract interest rate, and other damages. Metlife, 159 N.J. at 502.

As the Supreme Court explained in Metlife,

> Default charges are commonly accepted as means for lenders to offset a portion of the damages occasioned by delinquent loans. . . . The lender cannot predict the nature or duration of a possible default given many possible causes of borrower delinquencies. Nor is it possible when the loan is made to know what market conditions might be ten or fifteen years hence and, thus, what might be recovered from a sale of the collateral. For example, a lender cannot know what its own borrowing costs will be if the borrower defaults in paying a loan in the future, nor accurately predict what economic return it will lose when the borrower fails to repay the loan on time or how much in costs it will incur if the property is foreclosed or the borrower files for bankruptcy. Additional sums required in the context of collection activity, such as travel costs, expert fees and the costs of its loan officers' involvement in collection activities are difficult to prove with respect to any specific loan at its outset. We, therefore, have adopted the "modern trend" that the reasonableness test is applied either at the time the contract is made or when it is breached.

> [Id. at 501-02.]

Like other "liquidated damages, . . . default interest rates, . . . are [enforceable] subject to the test of reasonableness, that is, whether the stipulated damage clause is reasonable under the totality of the circumstances." Mony Life

Ins. Co., 364 N.J. Super. at 103 (citing Metlife, 159 N.J. at 493-95). "It is the general rule in the case of a corporate borrower that it is not illegal to provide for [even] a higher rate of interest than the legal rate after maturity, but if such rate is unconscionably high it will be unenforceable because it amounts to a penalty." Stuchin v. Kasirer, 237 N.J. Super. 604, 612 (App. Div. 1990) (quoting Feller v. Architects Display Bldgs., Inc., 54 N.J. Super. 205, 213 (App. Div. 1959)).

Here, Judge Sarkisian correctly determined that the City did not meet its burden of proving that the rate was unreasonable. It provided no industry information or other competent evidence suggesting that the rate was unreasonable. We find no merit to its contention that the term of Rosemont's loan to IPR or the parties' settlement order that contemplated Rosemont's discharge of its mortgages upon its receipt of the $75,000 payment was sufficient to rebut the presumption of reasonableness.

C.

We turn to the City's laches argument. According to the City, Rosemont could have applied for final judgment as early as December 1, 2016, but neglected to do so until April 27, 2017, with no explanation. It argues that the default interest accrued during that period should be deducted from the amount due, and that Judge Sarkisian erred in neglecting to credit the amount and finding that Rosemont's delay

was not intentional or an attempt to extend the accrual of interest. The City contends that laches should have applied to bar Rosemont's claim and that the judge erred in reading an "intent" element into the requirements for laches. According to the City, it needed only to demonstrate an "'inexcusable and unexplained delay' that result[ed] in prejudice" to it, which it did. We find no merit to this contention.

"Laches is an equitable doctrine that applies when a party sleeps on [its] rights to the harm or detriment of others." N.J. Div. of Youth and Family Servs. v. F.M., 211 N.J. 420, 445 (2012). It can be invoked "when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." Ibid. See also In re Estate of Thomas, 431 N.J. Super. 22, 30 (App. Div. 2013). In deciding whether to apply the doctrine, a court should consider "[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay." Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 152 (1982). Significantly, "[w]hether laches should be applied depends upon the facts of the case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004).

Applying the elements of the doctrine of laches to the evidence before Judge Sarkisian, we are convinced that the doctrine did not apply. Here, the four- to five-month lapse between the end of the forbearance period and Rosemont's motion for

final judgment was not a significant amount of time or unreasonable delay so as to constitute laches, especially because there was no evidence that it intentionally delayed filing in order to extend the accrual of default interest. Moreover, there was no evidence that the City took any action or failed to act in reliance on its belief that Rosemont abandoned its right to move for final judgment. Under these circumstances, we discern no abuse of the judge's discretion in not applying the doctrine of laches.

D.

Finally, we address the City's contention that Judge Sarkisian used the wrong default date when calculating the amount due because the evidence supported a finding that Rosemont waived its right to default interest when it agreed to accept basic interest-only payments from 2009 through May 2014. According to the City, "[s]hort of a modification in writing, it is difficult to conceive of a clearer and more unambiguous admission that neither party considered the default date to be July 1, 2009." The City contends that Rosemont's conduct constituted an implied waiver of the contract provision requiring modification to be in writing. It relies upon the fact that IPR continued to make interest-only payments after it stopped principal payments in 2009 until May 2014, and Rosemont did not declare a default prior to May 2014. The City also supports its argument with deposition testimony from

A-1976-17T1

Israel Perlow that neither Rosemont nor IPR considered default to have occurred until May 2014, and from Rosemont's managing member who confirmed that the default rate was not being charged in 2009 and that Rosemont continued to work with IPR after the maturity date "as long as [it saw] there was a possibility that [the] loan [would] be properly satisfied." Additionally, the City points to the 2015 payoff statement from IPR that reflected "the lower note-rate interest of 11.5%." It also points to a 2015 verification of mortgage for $570,000 plus $2,764.64 to discharge the mortgage, arguing that if Rosemont had considered default to have occurred in July 2009, the figures would have been higher. We are not persuaded by these contentions.

It is undisputed that IPR's agreement with Rosemont contained an express provision that required any waiver of Rosemont's rights to be in writing. Specifically, section 8.7 of the agreement provided as follows:

> **No Waiver by Holder.** Neither the exercise of any provision hereof nor the delay in asserting any right granted to Holder . . . shall be construed as a waiver by Holder of the right to accelerate the indebtedness evidenced hereby as above provided or to pursue any other remedies available under this Note[.] . . . Any waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought, and then only to the extent therein set forth.

Waiver "'involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them.'" Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008) (quoting Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988)). "Such a waiver must be done 'clearly, unequivocally, and decisively.'" Cole v. Jersey City Med. Ctr., 215 N.J. 265, 277 (2013) (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). Where a contract requires any waiver or modification to be in writing, we will enforce those unambiguous terms, absent clear conduct that the parties intended to waive the requirement for a writing. See Lewis v. Travelers Ins. Co., 51 N.J. 244, 253 (1968); Home Owners Constr. Co. v. Glen Rock, 34 N.J. 305, 316 (1961); Headley v. Cavileer, 82 N.J.L. 635, 637-39 (E. & A. 1912). Clear and convincing evidence is required to prove waiver of a writing requirement. Home Owners Constr. Co., 34 N.J. at 317.

Here, there was no dispute that Rosemont and IPR never executed any writing that modified their agreement. Moreover, Rosemont's conduct as described by the City did not constitute a voluntary and intentional relinquishment of its right to require written modifications or performance of the note's terms. It never agreed to extend the loan's maturity date and there was no agreement that interest was not accruing at the default rate. At most, the parties' communications reflected a

A-1976-17T1

temporary forbearance, which did not preclude plaintiff from exercising its rights with respect to IPR's and the Perlows' default and the accrual of interest at the default rate. The City's reliance on the 2015 payoff statement is also unavailing because it evidenced only plaintiff's willingness to accept a lesser sum in satisfaction of the loan at that time. Again, we are left with no reason to disturb the judge's findings, which we conclude were amply supported by the record, or his conclusions of law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1976-17T1